ERNEST J. DARGIE ET AL. *v.* CITY OF HARTFORD ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, JS.

Argued December 5, 1962—decided January 15, 1963

*Frank A. Francis,* for the appellants (plaintiffs).

*William W. Sprague,* with whom, on the brief, was *John R. FitzGerald,* for the appellees (defendants).

MURPHY, J. The plaintiffs seek to recover from the defendants for damage to their building and land claimed to have resulted from the containment of the waters of Cemetery Brook as part of the flood control program in Hartford. The court rendered judgment for the plaintiffs to recover damages of $1476, and they have appealed. The complaint is in three counts, alleging breach of contract, negligence and trespass. The defendants are the city of Hartford and two D'Addario construction firms which had contracted with the flood control commission of the city to do this particular work. The court allowed recovery for breach of contract and trespass under the first and third counts but found for the defendants on the second, or negligence, count.

The plaintiffs purchased their property on White Street in Hartford on March 21, 1957. Two months before, their predecessor in title had granted an easement to the flood control commission to enter on the land to relocate and enclose Cemetery Brook, part of which flowed through the property, to prevent flooding. A food market and a drugstore occupied the one-story brick building on the property. On April 3, 1957, the plaintiffs executed an agree-

ment with the commission which, it successfully persuaded the court, limited its liability for damages to the cost of restoring specific portions of the property.

The plaintiffs are not entitled to any corrections in the finding of facts. They assign error in certain findings on the ground that they were not reasonably supported by the evidence. This assignment implies that there was some evidence to sustain the findings. As the assignment makes no claim that the findings were found without evidence, it does not conform to our requirements. Practice Book § 392; *Aetna Casualty & Surety Co.* v. *Poppel & Sons Service Station, Inc.*, 142 Conn. 598, 599, 115 A.2d 655; Maltbie, Conn. App. Proc. § 173. Likewise, none of the paragraphs of the draft finding can be added to the finding, as the plaintiffs have requested. There is no claim made that any of these paragraphs are either admitted or undisputed. Practice Book § 392; *Bridge-Mile Shoe Corporation* v. *Liggett Drug Co.*, 142 Conn. 313, 317, 113 A.2d 863. Error is also assigned in two rulings on evidence. Neither of them is stated in the finding in compliance with § 405 of the Practice Book and Form No. 560. It is not possible, therefore, to consider them. *Nickerson* v. *Griffing,* 139 Conn. 720, 727, 97 A.2d 559.

The easement which the flood control commission obtained from the prior owner of the plaintiffs' property constituted a perpetual right of entry to go on all of the land described in the easement deed and to do all the things necessary not only to construct the conduit through which the brook was to flow but to maintain and operate the project thereafter. The commission in return convenanted either to pay just damages to the owner for injury to the

buildings or other properties on the land caused by the exercise of the easement or reasonably to restore the premises to the condition in which they existed before any entry took place, in which case the restoration was to be made pursuant to a written agreement to be executed thereafter. The agreement of April 3, 1957, recited that it was executed pursuant to the easement deed, and in the agreement the plaintiffs granted the commission and its representatives the right to enter on and to work in an area of the plaintiffs' property which was outlined on a sketch attached to the agreement. The work area did not include the portion of the plaintiffs' land which was occupied by the building, or the rear half of an adjacent parking lot, or the area in front of the building. The agreement was for a period of one year, with an option to renew for an additional year. In consideration, the commission covenanted reasonably to restore the "premises to their condition as existed before the exercise of said right of entry, as hereinafter more specifically set forth and mutually agreed to." The commission expressly agreed to (1) regrade the rear parking area, (2) replace trees on the west side of the building which would have to be cut down, (3) protect the side of the building from damage by machines, and (4) protect the building and foundation with supporting sheeting during excavation. The agreement concluded in this language: "This Indenture contains all the terms and conditions agreed on by the parties hereto and, except for the easement deed hereinbefore referred to, no other agreements, oral or otherwise, shall be deemed to exist or to bind any of the parties hereto."

So far as appears from the record, the agreement was entered into by the parties before any

work was done on the project, which seemingly got under way on July 7, 1958, after the commission had exercised its option to extend the term for the completion of the work for another year. The work was not completed by April 3, 1959, but continued until June of that year. During the course of the work or thereafter, various cracks in the walls of the building, an unevenness in a floor and some other faults in the plaintiffs' property became apparent to the plaintiffs, who attributed them to the defendants' operations. The defendants offered evidence that at least some of the faults had existed before the work started and that at most the faults were aggravated by the work on the conduit. The draining of the water in the brook and its subsequent enclosure in the conduit resulted in removing water content from the soil under and around the building. This removal, in turn, caused a shrinkage of the soil and brought about a settling of the building. Some of the damage came from the settling process, although jarring or vibration from the use of a steel ball to break up the pavement may have contributed to it. The finding is not specific as to the extent of such damage, except for the conclusion that none of it was caused by the negligence of the defendants. This conclusion and all but one of the others reached by the court are claimed to be unsupported by the facts found. Upon the facts found, the trier was not compelled to find that the defendants were negligent. Particular stress is laid by the plaintiffs on the conclusion that they are entitled to recover proven damages on the theory of breach of contract "as limited by the agreement." On the basis of the uncorrected finding of facts, this conclusion cannot be disturbed. The damages awarded for breach of contract are in

fact compensation for damage to the plaintiffs' building resulting from the failure of the defendants to give proper lateral support to it. This failure was a violation of the provision in the agreement to protect the building and foundation during excavation.

A judgment in the amount of $1476 was rendered for the plaintiffs. Of this amount, $1226 was awarded in damages substantially to restore the plaintiffs' building to its prior condition. Ostensibly, the difference of $250 represents the damages attributable to the trespass alleged in the third count, although neither the finding nor the memorandum of decision shed any light on the matter. None of the parties, however, complain on this score. A specific finding on the point would have clarified the matter.

There is no error.

In this opinion the other judges concurred.