HENRY S. BUDNEY ET AL. *v.* HOWARD S. IVES, HIGHWAY COMMISSIONER

ALCORN, HOUSE, COTTER, THIM and RYAN, Js.

Argued December 7, 1967—decided January 30, 1968

*William J. Clarke* and *Jack Rubin,* assistant attorneys general, with whom, on the brief, was *Harold M. Mulvey,* attorney general, for the appellant (defendant).

*Edwin A. Lassman,* with whom was *Edward S. Rogin,* for the appellees (plaintiffs).

HOUSE, J. This case arose from a taking by the defendant highway commissioner, under the eminent domain statutes, of a 3.85-acre parcel of land located on the westerly side of Windsor Street in a rural residence zone in Manchester. The plaintiffs bought the property in August, 1953, with the idea of erecting a motel thereon. In 1961, they applied to the Manchester planning and zoning commission for a change of zone to permit the use of the land for a motel. The application was not acted upon favorably. Several weeks prior to October 4, 1965, they again applied to the commission for a change of zone from rural residence to business or industrial so that they might erect a motel. Their application was scheduled for a public hearing to be held on the evening of October 4. On the morning of October 4, the state took the property for highway purposes in connection with a proposed improvement of interstate route 84, and representatives of the defendant highway commissioner appeared at the hearing and opposed the application for a change of zone. At an executive session of the commission held on November 1, the plaintiffs' application was denied.

The plaintiffs appealed to the Superior Court from the defendant's assessment of $16,800 damages for the taking of the property. The appeal was referred to a state referee for a hearing and report. The referee, after a hearing, found the fair market value of the property to be $35,000 an acre and concluded that the plaintiffs' damages should be assessed at $134,750. In response to two motions to correct the report, the referee clarified

his original report to indicate that he had examined the area and found the location to be at a major intersection of an interstate highway and that his valuation of the property as of the time of the taking was based on its location in a rural residence zone but "with a strong, not speculative, likelihood or probability of a change to be made as desired and requested by the plaintiffs." In support of this conclusion the referee relied on his observation of the premises and the testimony of several witnesses. There was evidence that in front of the subject property, across Windsor Street, there was a gasoline station. Several months prior to the hearing, the land on the other side of interstate route 84 was rezoned to permit the construction of a large shopping center. The property to the west of the plaintiffs' land was in an industrial zone, and the land just east of it was rezoned for industrial use after April 2, 1964. The town planner identified a 1963 master plan, approved by the commission, which showed the subject property to be in an area proposed for an industrial use zone. It was his opinion that, if the state highway department was not taking the land, it was likely that the commission would have followed the indication on the plan and granted the plaintiffs' application for a change of zone. The chairman of the commission testified that the commission had denied the plaintiffs' application for a change of zone because of the objections from the highway department and its plans to lay out interstate route 84 through the property. In response to a motion by the defendant, the referee made an alternative finding that "the fair market value of the subject property would be $16,800 if I am limited to finding the valuation solely on the basis of its being in a rural

residential zone at the time of condemnation and in the event that I cannot consider the location of the premises, the evidence of the Chairman of the Zoning Commission, the Town Planner, the comprehensive plan of the Town of Manchester, the likelihood or probability of a zone change and the Town's own projected uses of the property and of the commercial uses being devoted to the property in the immediate vicinity of the subject property." The court denied the defendant's motion that the report of the referee be accepted in accordance with the alternative finding, granted the plaintiffs' motion for acceptance of the referee's report as amended, and rendered judgment for the plaintiffs predicated on the assessment of damages in the amount of $134,750. The defendant's appeal is from that judgment.

The defendant's primary assignment of error is that the referee erroneously based his conclusion as to value on the premise that he could consider the reasonable likelihood or strong probability of a zone change to permit a commercial or industrial use of the property, whereas, the defendant asserts, the referee was bound in law to value the property as it was in fact zoned on the date of condemnation. Other assignments of error relate to evidential rulings made by the referee.

We have not previously been called upon to decide whether the reasonable probability of a change in zoning restrictions may be considered in the determination of just compensation for property taken by eminent domain. The answer is to be found in the application of the general rule for the assessment of damages in condemnation cases. This rule was recently reiterated in *Seferi* v. *Ives,* 155 Conn. 580, 582, 236 A.2d 83, where we quoted from *Hous-*

*ing Authority* v. *Lustig,* 139 Conn. 73, 76, 90 A.2d 169: "In a case . . . where an entire piece of property is taken, the proper measure of damages is the fair market value of the real property. We said in *Andrews* v. *Cox,* 127 Conn. 455, 457, 17 A.2d 507: 'Generally speaking, market value is "the price that would in all probability—the probability being based upon the evidence in the case—result from fair negotiations, where the seller is willing to sell and the buyer desires to buy." *Portland Silk Co.* v. *Middletown,* 125 Conn. 172, 174, 4 Atl. (2d) 422. From this it follows that in determining market values in awarding damages for land taken, it is proper to consider all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of the land; . . . unless, indeed, the considerations advanced are not a necessary, natural or proximate result of the taking . . . . The determination of the damages to be paid requires consideration of "everything by which the value is legitimately affected"; *Holley* v. *Torrington,* 63 Conn. 426, 433, 28 Atl. 613 . . . .' "

It cannot be doubted that both a prospective purchaser and a seller on the open market would consider the probability of a change in zoning restrictions affecting property which they considered buying and selling where such a change was reasonably probable in the reasonably near future. Accordingly, where such a change is reasonably probable and not merely a remote or speculative possibility, the probability may properly be considered in the determination of the fair value of property taken by eminent domain. This is the rule applied in the majority of jurisdictions which have considered the problem. See note, 9 A.L.R.3d 291, 309; 27 Am. Jur. 2d, Eminent Domain, § 277; 1 Orgel, Valuation

Under Eminent Domain (2d Ed.) § 34; 4 Nichols, Eminent Domain (3d Ed.) § 12.322 [1]; Limerick, "The Effect of Zoning on Valuation in Eminent Domain," 53 Ill. B.J. 956. "In permitting proof of a probable amendment, the law merely seeks to recognize a fact, if it does exist. In short if the parties to a voluntary transaction would as of the date of taking give recognition to the probability of a zoning amendment in agreeing upon the value, the law will recognize the truth." *State* v. *Gorga,* 26 N.J. 113, 117, 138 A.2d 833.

In *State* v. *Gorga,* supra, the Supreme Court of New Jersey took pains to emphasize an important *caveat,* that is, that the true issue is, not the value of the property for the use which would be permitted if a change in zone was made, but the value of the property as zoned at the time of the taking as it is affected by the probability of a change. "Zoning amendments are not routinely made or granted. A purchaser in·a voluntary transaction would rarely pay the price the property would be worth if the amendment were an accomplished fact. No matter how probable an amendment may seem, an element of uncertainty remains and has its impact upon the selling price. At most a buyer would pay a premium for that probability in addition to what the property is worth under the restrictions of the existing ordinance." Ibid.

It must also be recognized that, although the possibility of a change in zoning requirements always exists in some degree, it must often be difficult to prove that such a possibility has become a reasonable probability. Wishful thinking, optimistic conjecture, speculation, rumor and unfounded prognostications do not furnish a proper basis for a finding that a litigant has proved the reasonable

probability of a future change in zone. Because of the uncertainties necessarily attending the determination of the probability of the happening of such an event in the future, claims and evidence regarding the probability must be scrutinized with care and examined with caution. Nevertheless, if such a reasonable probability is proved, it is a proper fact to be considered in the determination of the fair value of property taken by condemnation proceedings.

In the present case, there was abundant evidence to support the referee's conclusion that, although at the precise time of the taking of this property it was in a rural residence zone, there was a "strong, not speculative, likelihood or probability" that, but for the taking of the property for highway purposes, it would have been rezoned so that the plaintiffs could have used it for motel purposes. As we noted in *Mott's Realty Corporation* v. *Town Plan & Zoning Commission,* 152 Conn. 535, 538, 209 A.2d 179: "Where . . . the same commission functions in both planning and zoning, it is logical to assume that, when zoning changes are sought, the action of the commission would be guided by its own recommendations in the master plan, i.e., the manner in which the commission believes that the municipality should achieve coordinated development." The referee could properly consider the uniquely strong probability of a change of zone as a factor affecting the value of the land at the time of the taking, and he committed no error in doing so.

The defendant asserts that the referee committed error in admitting testimony from the town planner and the chairman of the town planning and zoning commission as to what action the commission would

have taken if it were not for the prospective construction of the highway which was the reason for the subject condemnation. It does not appear, however, that the referee was requested to include in his report a statement as to his rulings on evidence or to make a finding of his rulings. Practice Book §§ 358, 355; *Garofalo* v. *Argraves,* 147 Conn. 685, 687, 166 A.2d 158; Maltbie, Conn. App. Proc. § 219. In the absence of a finding or a recital in the referee's report as to what objections and rulings were made and what exceptions were taken at the time the testimony was admitted, any question as to the admissibility of this testimony cannot now be raised on appeal. Practice Book §§ 226, 648, 652; *Stanley Works* v. *New Britain Redevelopment Agency,* 155 Conn. 86, 97, 230 A.2d 9. Only where the procedure set forth in § 226 of the Practice Book is followed will a ruling on evidence be considered by us. *Skinner* v. *Skinner,* 154 Conn. 107, 110, 221 A.2d 848.

In the remaining assignment of error, the defendant asserts that the judgment of the court in effect affirmed the referee's erroneous denial of the defendant's motion to strike the evidence of value presented by the plaintiffs' two appraisers which was patently based on a business or commercial use of the property although the property was still zoned for rural residence use. Since, as we have already indicated, the referee could properly consider the probability of a change in the zone with its consequent effect on the value of the property, the expert opinions of the plaintiffs' witnesses were relevant even though in part predicated on a change in the zoning classification. The referee was not bound by the opinion of the experts, and, as the report indicates, he did not fully accept any of them. "Ultimately, the determination of the value

of the land depended on the considered judgment of the referee, taking into account the divergent opinions expressed by the witnesses and the claims advanced by the parties. . . . There is nothing to show that in determining the value of the plaintiffs' land the referee misapplied or overlooked, or gave a wrong or improper effect to, any test or consideration which it was his duty to regard. *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641." *Bennett* v. *New Haven Redevelopment Agency,* 148 Conn. 513, 516, 172 A.2d 612.

There is no error.

In this opinion the other judges concurred.