STATE OF CONNECTICUT *v.* FRANK J. MISELIS ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued October 12—decided November 22, 1972

*James W. Sherman,* for the appellants (defendants).

*Brian E. O'Neill,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellee (state).

SHAPIRO, J.   The state claims ownership of certain land in the town of Salem and bounded by Gardner Lake.  Its complaint alleges that the defendants are unlawfully maintaining a concrete wall on its land and have erected a pier extending into the lake waters so as to deprive it of the lawful use and enjoyment of those waters for recreational purposes.  The state sought an injunction restraining the defendants from maintaining the wall and the pier and from interfering with its use of the lake.

The defendants' substituted answer denied the allegations of the complaint and filed a counterclaim

in five counts, seeking in the first count to quiet title as to a portion of the land claimed by the state; in the second count, an injunction against the state's use of the disputed portion of land; in the third count, to restrain the state from interfering with their use and enjoyment of the portion of land in dispute and the lake waters as well as to recover damages; in the fourth count, claiming damages and injunctive relief and alleging a deprivation of their constitutional rights regarding their use of the land and lake waters; and in the fifth count, claiming that the state together with others conspired wrongfully to deprive the defendants of their property and their land and water interests. The trial court (*Armentano, J.*) ordered that the complaint and counts one, three and four of the counterclaim be referred to a state referee for a hearing and judgment, and should the defendants fail to proceed with counts two and five of the counterclaim then those counts were to be dismissed.

The referee, acting as the court, found the issues in favor of the state on its complaint and also found for the state on counts one, three and four of the defendants' substituted counterclaim. From a judgment rendered thereon the defendants have appealed.[1]

The finding of fact from which the court reached its conclusions is set forth in fifty-seven paragraphs. In their assignments of error, the defendants have attacked thirty-four of these paragraphs on the ground that they were found without evidence or are in language of doubtful meaning. In addition, the defendants have assigned error in the refusal of the court to find facts as set forth in thirty-eight

---

[1] The record fails to disclose any subsequent action by the defendants as to counts two and five of the counterclaim.

paragraphs of their draft finding, which facts they claim are material and were admitted or undisputed. Moreover, the defendants have assigned error directed to the eight conclusions reached by the court on the claim that seven of them were factually unsupported.

In a court trial of a case which presents primarily an issue of fact, it may be expected that the party appealing will attack the finding in several respects. See *Wesley* v. *DeFonce Contracting Corporation,* 153 Conn. 400, 402, 216 A.2d 811. But although an extensive challenge to the sufficiency of evidence supporting the finding may be justified in certain cases, it is readily apparent here that the defendants have substituted random target practice for deliberate aims in their assignments of error. They have not sought so much to delineate the issues as to obscure them and they have not endeavored so much to demonstrate unsupported findings of fact as to add argumentative and immaterial matters to the finding. Of the seventy-nine assignments of error, many seek to strike, on the grounds that they were found without evidence, findings which in fact were generously supported, as the appendix to the state's brief indicates. Many of the defendants' attacks contain misleading verbiage, several merely seek to substitute language of their draft finding for paragraphs of the referee's finding, some assignments of error have not been pursued on appeal, and others are palpably incompetent to raise any issue whatsoever on appeal. Under § 622 of the Practice Book, errors in the finding are to be assigned (a) in finding without evidence a material fact, (b) in refusing to find a material fact which was admitted or undisputed or (c) in finding a fact in language of doubtful meaning, so that its

real significance may not clearly appear. On appeal, the defendants may not demand that paragraphs of their draft finding replace or be added to a court's finding of facts where there is no claim that the facts contained in these paragraphs were material and admitted or undisputed. *Dargie* v. *Hartford,* 150 Conn. 261, 263, 188 A.2d 491. Had the defendants deemed the finding of the court deficient in respects not covered by § 622 of the Practice Book, their remedy lay in proceedings to rectify the appeal under § 675 of the Practice Book.

As a preliminary comment on the method of attack which the defendants have pursued here, we have not deemed it necessary expressly to prescribe in our rules the requirements of clarity, organization and conciseness—elements which ordinarily do not accompany a wholesale attack on the finding. After our repeated comments in such cases as *Branford Sewer Authority* v. *Williams,* 159 Conn. 421, 424, 270 A.2d 546, and *Franks* v. *Lockwood,* 146 Conn. 273, 275, 150 A.2d 215, counsel should understand that such a diffuse and confusing method of attack as is pursued here—a battery of challenges to almost every paragraph of the finding—tends to cloud the real issue and cast doubt on the merits of the defendants' claims. *Branford Sewer Authority* v. *Williams,* supra.

After a painstaking examination of the record, briefs and appendices, we conclude that the defendants are not entitled to any of the corrections sought in the finding.[2]

---

[2] The solitary discrepancy we have discovered appears to be a typographical error occurring twice in the finding of facts. Two paragraphs of the finding which are attacked describe the boundaries to the disputed land, based on exhibits (original deeds and maps) supplied in the plaintiff's appendix. These exhibits describe the point of origin as "beginning at a drill hole . . . , said point being

The relevant portions of the court's finding of facts disclose the following: The state of Connecticut is the owner of land on the southerly shore of Gardner Lake. This land is under the control and jurisdiction of the state board of fisheries and game and is used as a boat launching area for the public. The defendants are the owners of land on the southerly lake shore, bounding the plaintiff's land on the west. In 1963, the state acquired 2.69 acres of land having a frontage of 100 feet on the south shore of the lake. In 1966, the state acquired a second parcel of land, triangular in shape and lying westerly of and adjoining the first parcel. The latter parcel has a frontage of nine feet on the lake, lies westerly of and adjoins the defendants' land. The state and the defendants derived title to their lands through a series of conveyances originating with Lewis Latimer, the common grantor, who in 1914 was the owner of land on the southerly shore of Gardner Lake. In 1951, when the defendants acquired title to their land, the adjoining owner on the east was Helen Sechter and the common bound between the two properties was monumented in part by a fence and a stone wall. In 1958, the fence and wall which had extended southerly from a point near the shore of the lake were obliterated. In 1959, the defendants endeavored to replace the fence line and thereafter the location of the true line was the subject of angry disputes between Sechter and the defendants. In 1966, Sechter conveyed the nine-foot triangular-shaped parcel to the state. Neither the

located North 70° 63′ West." The two paragraphs of the finding incorporate the exact language with the exception that the exhibits read "beginning at a drill hole . . . , said point being located North 70° 03′ West." Since no other evidence contradicts the "70° 03′" figures, it is assumed that these are the correct figures and that the two paragraphs of the finding intended to incorporate them.

defendants nor the state have title or ownership to the land under the lake waters. The state is the owner of the dam and its site, including all the flowage rights to the lake. In 1966, the defendants built and maintained a dock extending for about 100 feet into the lake, which is in front of the state's land and obstructs and interferes with its use of the lake frontage for boat launching and other recreational purposes.

The court concluded that the state is the owner of the 100-foot and nine-foot lakefront parcels of land; that the defendants have no title or ownership to the land under the waters of Gardner Lake and have acquired no rights to the use of the same by prescription; that the state has no title or ownership to the land under the lake; that the state is the owner of the dam and its site, including all flowage rights to the lake; that the state has the right to reasonable use of the lake waters for recreational purposes, free from unreasonable use or obstruction by other riparian owners; that the lake frontage of the state is 108.79 feet and that of the defendants is 108.3 feet, each party having rights incidental to ownership of land along the lake shore; and that the maintenance by the defendants of their dock in front of the state's land is an unlawful obstruction and interference with its rights as a riparian owner.

There remain only two assignments of error which do not resolve themselves into questions of the sufficiency of evidence or the reasonableness of the conclusions reached by the court. Of these, the first attempts to raise on appeal an objection to the admission into evidence of the plaintiff's exhibit C, a plan drawn up in 1914 of the Latimer property. For the reason that no objection was made at the trial and for the further reason that no ruling on

evidence appears in the finding, this court cannot consider the claim. Practice Book §§ 648, 652; *State v. Lombardo,* 163 Conn. 241, 245–46, 304 A.2d 36; *State* v. *Paulette,* 158 Conn. 22, 25, 255 A.2d 855; *Dargie* v. *Hartford,* 150 Conn. 261, 263, 188 A.2d 491; Maltbie, Conn. App. Proc. § 147. The second and final claim attacks the referee's evidentiary ruling on six deeds, purportedly originals, which the defendant offered into evidence. Although the court excluded the proffered documents, we cannot determine the propriety of his ruling because the deeds were not marked for identification and, consequently, are not part of the record on this appeal. *National Broadcasting Co.* v. *Rose,* 153 Conn. 219, 227, 215 A.2d 123; *Duncan* v. *McTiernan,* 151 Conn. 469, 470, 199 A.2d 332; Maltbie, op. cit. § 310. Because the defendant failed to preserve the deeds for examination by this court, this court has no basis for determining whether there was error in the court's ruling.

There is no error.

In this opinion the other judges concurred.