STEPHEN RUSHCHAK *v.* CITY OF WEST HAVEN

HOUSE, C. J., COTTER, LOISELLE, MACDONALD and LONGO, Js.

Argued November 12, 1974—decision released February 4, 1975

*Thomas F. Keyes, Jr.,* for the appellant (plaintiff).

*Robert E. Reilly,* corporation counsel, with whom was *Louis S. Votto,* for the appellee (defendant).

HOUSE, C. J. This case arose from a taking for school purposes by the defendant city of a parcel of land consisting of about sixteen acres in West Haven owned by the plaintiff. The statement of

compensation filed with the clerk of the Superior Court assessed as damages to the plaintiff for the taking the sum of $30,000. The plaintiff appealed to the Superior Court from the assessment of damages and the matter was referred to a state referee who, after a hearing, concluded that the property at the time of the taking had a fair value of $93,600 and, accordingly, rendered judgment that the defendant pay to the plaintiff the deficiency of $63,600, together with interest and appraisal and expert testimony fees. From that judgment the plaintiff took the present appeal. Although in his assignment of errors the plaintiff has made a general attack on the finding of facts, the principal claims as briefed by the plaintiff are two: (1) that the award of $93,600 was so low as to be inequitable and an abuse of discretion and (2) that the court[1] erred in refusing to admit the opinion testimony of expert witnesses as to the probability of zoning changes affecting the subject property, and, by so doing, failed to take into account an element which strongly affected the value of the property taken.

The plaintiff's claims of error addressed to the findings of fact require but brief mention. Despite our repeated admonitions about such wholesale attacks, the plaintiff has claimed error in the

---

[1] We recognize that a state trial referee exercising the powers of the Superior Court or the Court of Common Pleas on matters referred to him as a state referee under the provisions of article fifth, § 6, of the constitution of Connecticut is "sui generis" and "sits as a special tribunal." *Florida Hill Road Corporation* v. *Commissioner of Agriculture*, 164 Conn. 360, 362, 321 A.2d 856. Nevertheless, in the interest of uniform terminology, in discussing appeals from judgments rendered by such referees, we have adopted the practice of referring to such a referee as the "court" in the same manner as we refer to judges of the Superior Court or the Court of Common Pleas in discussing appeals from those courts.

court's refusal to find 103 paragraphs of his draft finding and in making thirteen findings which, the plaintiff asserts, were found without supporting evidence. As we have frequently stated, such attacks tend to cloud the real issue and in themselves cast doubt on the party's claims. *Dick* v. *Dick,* 167 Conn. 210, 212, 355 A.2d 110; *State* v. *Miselis,* 164 Conn. 110, 114, 318 A.2d 102. It suffices to repeat that to secure an addition to a finding of fact on the ground that it was admitted or undisputed, it is necessary for the plaintiff to point to some part of the appendix, the pleadings, or an exhibit properly before us, which discloses that the defendant admitted that the fact in question was true or that its truth was conceded to be undisputed. *Barnini* v. *Sun Oil Co.,* 161 Conn. 59, 60, 283 A.2d 217. A finding will not be corrected to add evidential or immaterial matter or facts which have no bearing on the issues on which the judgment was predicated. *Charter Oak Estates, Inc.* v. *Kearney,* 160 Conn. 522, 525, 280 A.2d 885; *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 481, 234 A.2d 825. Nor will a finding be corrected by the addition of facts that will not affect the result. *Lewis* v. *Lewis,* 162 Conn. 476, 481, 294 A.2d 637. Despite the plaintiff's many assignments of error directed at the court's finding, we do not find that it is subject to correction in any respect which would aid him.

The property which was taken by the defendant town consisted of about sixteen acres. The tract was irregular in shape and lay in a heavily wooded area. It was bisected by a brook with several small tributaries and some of the land near the brook and its tributaries was swampy. Practically all of the tract was burdened by extensive large outcroppings

of rock, some of them rising many feet above the surrounding ground. The tract had a street frontage of 250 feet on the westerly side and ran for about 1500 feet to the east, bellying out to over 500 feet at the halfway mark of its depth. Public utilities and a municipal sewer system were available within 600 feet of the tract and the predominant use of land in the general neighborhood of the site, to the north, east and west was residential.

Until March, 1967, the tract was zoned "Residence B," a zone which permitted three-family houses. On March 1, 1967, the planning and zoning commission adopted new comprehensive zoning regulations for the entire city. Anticipating the acquisition of the plaintiff's tract and of adjoining properties by the city, the commission changed the zoning classification of the selected site from "Residence B" to "Open Space." At the same time, the commission classified the nearby surrounding land as "Residence 3-1," a classification which did not permit multifamily dwellings.

The plaintiff called three expert witnesses to give their opinions as to the value of the tract, two of them real estate appraisers and the third a contractor-developer. One appraiser, Richard Brennan, valued the tract at $360,000 or $22,500 an acre. The other appraiser, Constantine Neri, valued it at $400,000 or $25,000 an acre. The contractor-developer valued it at $176,000 or $11,000 an acre. All three expert witnesses based their opinions on the assumption that the tract upon application by the plaintiff would have been reclassified zonally so as to permit the use of multifamily structures. On the basis of that assumption, each of the plaintiff's three experts appraised the

value of the tract on what he believed to be comparable sales of similar property located in zones which permitted multifamily structures. Such a use would be the highest and best use of the tract if the zoning regulations permitted such use. As we have noted, however, the zoning regulations did not permit multifamily dwellings on the tract at the time of the taking. The defendant produced as a witness the planning director of West Haven and administrator of the West Haven planning and zoning commission who testified that if the plaintiff's land were to be rezoned from its open space classification, it would in all reasonable probability be rezoned in accordance with the surrounding residential uses to R3-1 which was single-family residential. Two members of the planning and zoning commission also testified. One testified that he would have probably voted to change the plaintiff's property to R3-1 single-family residential zone. The other testified that he would not have voted to change the zone to a multifamily zone because the surrounding area was, to a large degree, comprised of single-family homes. The court found that in the event that the school building project on the site had been abandoned the planning and zoning commission would have reclassified the land within the site and such classification, "in all reasonable probability, would have been 'Residence 3-1' in order to conform to the classification of surrounding properties." It also found that the reasonable probability was that the tract would not have again been rezoned to permit multifamily structures if the city had not acquired the tract. Although these latter findings were attacked by the plaintiff as being found without evidence, that claim is clearly without merit.

The finding of the court with respect to the reasonable probabilities for any change of zone as they existed at the time of the taking clearly distinguishes this case from that of *Budney* v. *Ives,* 156 Conn. 83, 239 A.2d 482, upon which the plaintiff relies. In the *Budney* case, we held that since a prospective purchaser and seller on the open market would consider the effect of the reasonable probability of a zone change of property to be made in the reasonably near future, that probability, if it exists, may be considered in the determination of the fair value of property taken by condemnation. See note, 9 A.L.R.3d 291, 309; 27 Am. Jur. 2d, Eminent Domain, § 277; and other authorities cited in the *Budney* case. In that case (p. 86) the referee found that there was " 'a strong, not speculative, likelihood or probability' " of a zone change. On the appeal, we found (p. 90) that there was "abundant evidence to support the referee's conclusion" and agreed that he "could properly consider the uniquely strong probability of a change of zone as a factor affecting the value of the land at the time of the taking, and he committed no error in doing so." In the *Budney* case the state started condemnation proceedings on the very morning of the day on which an evening hearing was scheduled to consider a change of zone. The change would have been in accordance with the town's master plan for zoning already approved by the commission and both the town planner and the chairman of the zoning commission testified that but for the taking it was likely that the commission would have granted the application for a change in zone. The contrast between those circumstances before the referee in the *Budney* case and those in the present case is obvious.

The plaintiff's assignments of error addressed to the rulings on evidence involve the same basic principle. The plaintiff, through a witness, offered as exhibits two maps showing how proposed apartment complexes could fit on the subject property and, on objection, the court excluded both on the ground that no proper foundation had been laid to make them relevant since no evidence had been offered as to the probability of a change in zone which would permit the use of the property for apartment houses.

Richard Brennan, one of the plaintiff's appraisers, testified that his appraisal was made on the assumption that the property would be zoned to permit the construction of apartment houses and that he had no opinion as to the value if there were no change in the zone. The court permitted him to testify as to the assumption on which he predicated his appraisal as relevant to the basis for his opinion of value but refused to admit his personal opinion as to what the zoning board would have done about a zone change as evidence of what the board would in fact have done. Subsequently, the plaintiff recalled Brennan as a witness and again attempted to elicit his opinion as to what action the zoning board would have taken on an application to change the zone to permit multifamily dwellings, indicating his reliance upon the decision in the *Budney* case. The court again excluded evidence as to the opinion of the witness on this point, adhering to its prior ruling and noting: "Furthermore, if it was admissible, it would have so little weight in the face of what these other members of the Board have told me."

The court also sustained objections to questions directed to Joseph Apter, a witness for the plaintiff,

as to his own experiences with the zoning board in obtaining changes in zone for other properties and as to his opinion regarding the value of the property for apartment house development, again noting that "[w]e are interested in the value as of the date of condemnation."

We find no error in these evidential rulings of the court. The existence of a reasonable probability of a zone change is a question of fact for the trier. *Lynch* v. *West Hartford,* 167 Conn. 67, 74, 355 A.2d 42. Also, the determination of the qualification of an expert witness is largely a matter for the discretion of the trier whose decision is not to be disturbed on appeal unless that discretion has been abused, or the error is clear and involves a misconception of the law. *Nash* v. *Hunt,* 166 Conn. 418, 425, 352 A.2d 773. The court in making its rulings indicated that it fully understood the caveat which we expressed in the *Budney* case (pp. 89–90) that "[w]ishful thinking, optimistic conjecture, speculation, rumor and unfounded prognostications do not furnish a proper basis for a finding that a litigant has proved the reasonable probability of a future change in zone" and "[b]ecause of the uncertainties necessarily attending the determination of the probability of the happening of such an event in the future, claims and evidence regarding the probability must be scrutinized with care and examined with caution." It expressly indicated to the plaintiff the weight which it would give to testimony from a majority of the members of the planning and zoning board and evidence to show that "in this vicinity, say across the street or to the north or to the south or to the east or to the west, applications have been made and in this vicinity changes in zone have been granted." It

does not appear that any such evidence of zone changes in the vicinity was offered and the direct evidence of the city planner and members of the board clearly indicated that the probability of any change in zone to permit multifamily residences was at best remote and speculative.

What we said in the concluding paragraph of our opinion in the *Budney* case (pp. 91–92) is fully applicable here: "The referee was not bound by the opinion of the experts, and, as the report indicates, he did not fully accept any of them. 'Ultimately, the determination of the value of the land depended on the considered judgment of the referee, taking into account the divergent opinions expressed by the witnesses and the claims advanced by the parties. . . . There is nothing to show that in determining the value of the plaintiffs' land the referee misapplied or overlooked, or gave a wrong or improper effect to, any test or consideration which it was his duty to regard. *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641.' *Bennett* v. *New Haven Redevelopment Agency,* 148 Conn. 513, 516, 172 A.2d 612." See also *Birnbaum* v. *Ives,* 163 Conn. 12, 21, 301 A.2d 262.

There is no error.

In this opinion the other judges concurred.