STATE OF CONNECTICUT *v.* JAMES CUVELIER

COTTER, LOISELLE, BOGDANSKI, LONGO and HEALEY, Js.

Argued February 9—decision released May 2, 1978

*David Schulz,* law student intern, with whom were *Mary F. Keller,* and, on the brief, *Dennis E. Curtis* and *Stephen Wizner,* for the appellant (defendant).

*George D. Stoughton,* state's attorney, for the appellee (state).

COTTER, J. The defendant, in a seven-count information, was charged with conspiracy to commit burglary in the third degree, conspiracy to commit robbery in the first degree, conspiracy to commit

assault in the first degree, injury or risk of injury to a child, and deviate sexual intercourse in the first degree. On March 6, 1974, after a trial by the court on the sixth count of the information,[1] the defendant was adjudged not guilty by reason of insanity and, pursuant to § 53a-47 (a) (1) of the General Statutes, ordered committed to the custody of the commissioner of mental health for a period not to exceed ninety days for an examination to determine his mental condition. Pursuant to the statute,[2] the superintendent of Whiting Forensic Institute subsequently filed a report with the court and, on June 6, 1974, the court found that the defendant was mentally ill to the extent that his release would constitute a danger to himself and to others and therefore ordered that he remain in the custody of the commissioner of mental health for a term not to exceed ten years. The state's attorney, therefore, declined to prosecute the defendant on the remaining counts of the information.

---

[1] This count of the information charged the defendant with "injury or risk of injury to child" in violation of § 53-21 of the General Statutes.

[2] "[General Statutes] Sec. 53a-47. ACQUITTAL ON GROUNDS OF MENTAL DISEASE OR DEFECT. CONFINEMENT AND EXAMINATION. RELEASE. (a) . . . (3) Within sixty days of the confinement pursuant to subdivision (1), the superintendent of such hospital and the retained psychiatrist, if any, shall file reports with the court setting forth their findings and conclusions as to whether such person is mentally ill to the extent that his release would constitute a danger to himself or others. Copies of such reports shall be delivered to the state's attorney or prosecutor and to counsel for such person. (4) Upon receipt of such reports, the court shall promptly schedule a hearing. If the court determines that the preponderance of the evidence at the hearing establishes that such person is mentally ill to the extent that his release would constitute a danger to himself or others, the court shall confine such person in a suitable hospital or other treatment facility. . . ."

On March 23, 1976, the defendant filed a motion to revoke the June 6, 1974, order of commitment on the ground that the defendant "is not now mentally ill to the extent that his release would constitute a danger to himself or others" as provided for in General Statutes § 53a-47. Following a hearing, the defendant's motion, upon order of the court, was denied on December 2, 1976, and he has appealed.

The defendant has assigned error in the trial court's refusal to find certain facts, in finding facts without evidence, and in reaching conclusions unsupported by facts set forth in the finding. Since the facts which the defendant seeks to have added to the finding are not admitted or undisputed material facts which would affect the result in this case, no corrections are warranted. Practice Book, 1963, § 628 (a); *Rushchak* v. *West Haven,* 167 Conn. 564, 566, 356 A.2d 104. The defendant's remaining assignments of error, directed at the finding, are disposed of by our determination of the defendant's primary claim that the trial court improperly relied upon statutory periodic review reports not formally introduced into evidence and the testimony of a psychiatrist, which the defendant claims was erroneously based upon past medical history.

At the time of the hearing on his motion, the defendant was confined at Whiting Forensic Institute, although he had previously been a patient at both Connecticut Valley Hospital and Norwich Hospital. Hans Langhammer, a psychiatrist at Norwich Hospital, to whose qualifications the parties stipulated, was called as a witness by the state to testify as to the defendant's current mental condition and was the sole witness to testify at the hearing of December 2, 1976. Langhammer, who

was familiar with the defendant and his past history, based his testimony on a personal interview with the defendant in November, 1976, and on a review of the defendant's record at Whiting, which included reports compiled in the six-month interval immediately preceding the hearing. The witness stated that, although the defendant had not threatened the safety or well-being of others during the past six months and had displayed no overt thought disorder during the interview with the pyschiatrist in November, the defendant's preoccupation with self-destruction had been noted by physicians in September, 1976, and he had recently been diagnosed as having an organic brain syndrome, the symptoms of which include a short frustration span and explosive outbursts. Langhammer also noted that on one or more occasions the defendant consumed alcohol or brought it back to Connecticut Valley Hospital when he was participating in a work release program there, and that preliminary evaluation notes at that institution indicated that alcohol or illicit drugs could cause the defendant to act unpredictably.

On the basis of his expert evaluation of voluminous records regarding the defendant's past history and on the basis of his own observations, Langhammer stated that, in his opinion, the release of the defendant at that time would and could constitute a danger to the defendant and to others due to mental illness. He concluded that, in view of the defendant's history of unpredictable behavior, his failure to exhibit any overt signs of dangerousness in the past six months is not alone sufficient to warrant a recommendation of release at the present time since the defendant still had a poor understanding of his underlying difficulties.

The court quite obviously chose to believe the uncontradicted testimony of the expert witness and, accordingly, concluded that, "[a]s a result of his mental illness, the release of James Cuvelier would constitute a danger to himself and others." The defendant's motion for revocation of commitment was therefore denied.

The gravamen of the defendant's broad attack upon the findings of fact rests upon his assertion that certain psychiatric reports before the court were erroneously relied upon to form the basis of the court's ultimate decision notwithstanding the failure of either party to introduce them into evidence and in spite of the fact that many of those reports were allegedly outdated and therefore irrelevant on the issue of the defendant's present condition.

When an individual is confined following an acquittal of criminal charges on the grounds of mental disease or defect, General Statutes § 53a-47 (c) (3) provides that periodic reports be submitted to the court concerning the individual's mental condition and copies of those reports be sent to both the state's attorney or prosecutor and counsel for the confined person.[3] Although a hearing to determine whether the individual should be released prior to the expiration of the maximum period is mandated only every five years, "[t]he court, upon its own motion or at the request of the parties, may at any time hold a hearing." In the present case, the hearing to determine the defendant's eligibility for release from confinement was

---

[3] Compliance with this requirement is indicated in the record.

held pursuant to the defendant's request filed eighteen months after the initial order of commitment.

The fact that psychiatric reports are required by statute to be filed with the court every six months does not, as the state argues, allow the court to dispense with the traditional evidentiary procedures followed in all other cases which require the formal introduction of such evidence. See McCormick, Evidence (2d Ed.) § 51. In view of the court's statutory authority to call for a hearing at any time on its own motion, those periodic reports serve to apprise the court of the individual's progress and, in the absence of any request by the parties, provide it with the facts necessary to make an informed decision as to the propriety of reviewing the status of the confined individual. Once the formal hearing has begun, however, the court must base its decision on the evidence presented by the parties. *Anonymous v. Norton,* 168 Conn. 421, 427, 362 A.2d 532. Without such a restriction, an individual seeking his release from confinement would be unable to prevent the court from relying upon portions of those records which may be irrelevant to his mental condition or otherwise unreliable to establish his present status. Further, by circumventing the rules providing for the formal presentation of evidence, a defendant is denied the opportunity to object to those records and thereby require their authors personally to testify in order that they may be confronted and cross-examined by the defendant. See, generally, annot., 32 A.L.R.2d 434, 473–75.

In this case, however, the trial court did not base its decision to deny the defendant's motion upon reports not introduced into evidence. An examina-

tion of the court's findings and the appendix to the state's brief reveals that the facts found by the court were based upon the testimony of Langhammer elicited during the hearing and on his report to the court dated November 8, 1976, identified as state's exhibit A.[4]  While the witness frequently referred to earlier reports not offered into evidence, it is important to note that nowhere in the record is there any indication that an objection or exception was taken by the defendant to any reference to those reports; consequently, it is not subject to review. *State* v. *Hawkins,* 162 Conn. 514, 517, 294 A.2d 584, cert. denied, 409 U.S. 984, 93 S. Ct. 332, 34 L. Ed. 2d 249.  In fact, counsel for the defendant extensively questioned the witness regarding the reports during a wide-ranging cross-examination.  The trial court was not alerted to the claim the defendant is now making on appeal, so that any material might have been marked for identification and an objection and exception taken, in order to give the court an opportunity to rule on the issue.  *Mucci* v. *LeMonte,* 157 Conn. 566, 569–70, 254 A.2d 879.

Most courts have held that when an expert witness bases his opinion as to sanity on medical, psychological or hospital reports or records not in evidence, the opinion is admissible if the reports are those customarily relied upon by such an expert

---

[4] Periodic reports evaluating the defendant's condition were filed with the court pursuant to § 53a-47.  The report dated November 8, 1976, signed by the superintendent of Norwich Hospital and Langhammer, stated that the defendant's release at that time would constitute a danger to the defendant and to others.  This report is found in the file and is in the appendices to both the defendant's brief and the state's brief and is marked "State's Exhibit A" as a full exhibit in the case.  No objection or exception to its admission into evidence appears in the record before us.

in making a diagnosis. *United States* v. *Harper,* 460 F.2d 705 (5th Cir.); *Jenkins* v. *United States,* 307 F.2d 637 (D.C. Cir.); *State* v. *Reardon,* 172 Conn. 593, 597–98, 376 A.2d 65; *People* v. *Ward,* 61 Ill. 2d 559, 338 N.E.2d 171; *Commonwealth* v. *Thomas,* 444 Pa. 436, 282 A.2d 693; see annot., 55 A.L.R.3d 551, §§ 4, 7 [a]; see also 3 Wigmore, Evidence (3d Ed.) § 688; McCormick, Evidence (2d Ed.) § 15. Nevertheless, even if this testimony were deemed to be inadmissible hearsay; see *United States* v. *Bohle,* 445 F.2d 54 (7th Cir.); where such evidence is admitted without objection, it may properly be considered for whatever it is worth on its face in determining the facts in issue. *Marko* v. *Stop & Shop, Inc.,* 169 Conn. 550, 562, 364 A.2d 217; *Sears* v. *Curtis,* 147 Conn. 311, 313, 160 A.2d 742; *Sizer* v. *Lenney,* 146 Conn. 457, 458–59, 151 A.2d 889; *Danahy* v. *Cuneo,* 130 Conn. 213, 217, 33 A.2d 132; *State* v. *Segar,* 96 Conn. 428, 437, 114 A. 389; annot., 79 A.L.R.2d 890, 897–904. In the present case, therefore, the findings of the court were properly based upon the testimony and report of the psychiatrist, Hans Langhammer.

Nor can we agree with the defendant that the trial court erroneously relied upon expert opinion based solely upon outdated information as to the defendant's mental condition. Langhammer testified that, on one or more occasions in the preceding six months, the defendant had been found drinking or bringing alcohol back to Connecticut Valley Hospital; that alcohol can cause him to react unpredictably; that a neurologist had recently diagnosed an organic brain syndrome, the symptoms of which include a short frustration span and explosive outbursts; that physicians had noted the defendant's preoccupation with self-destruction as

recently as September, 1976; that his transfer back to Whiting Forensic Institute from Connecticut Valley Hospital in July, 1976, indicated to him that the defendant's problems involved more than just his consumption of alcohol; and that, in his opinion, the defendant currently suffered from a poor understanding of his difficulties. From those facts and the opinion of Langhammer, the court could quite logically conclude that "[a]s a result of his mental illness, the release of James Cuvelier would constitute a danger to himself and others." Although the decision to release the defendant must have been based upon a determination that, at the time of the hearing, he was mentally ill so as to constitute a danger, his past history and conduct, if clearly known to the witness, is certainly a relevant factor for an expert and the court to consider in predicting his future behavior.[5] *State* v. *Krol,* 68 N.J. 236, 260–61, 344 A.2d 289. When viewed along with the facts recited above, the unattacked

---

[5] Predicting an individual's propensity for dangerous behavior is, of course, a difficult task for both psychiatrists and the courts in view of the inherent vagueness of the concept itself. See, e.g., Goldstein & Katz, "Dangerousness and Mental Illness: Some Observations on the Decision to Release Persons Acquitted by Reason of Insanity," 70 Yale L.J. 224, 235–36. While the accuracy of such predictions has been disputed by both the legal and medical professions; see, e.g., Cocozza & Steadman, "The Failure of Psychiatric Predictions of Dangerousness: Clear and Convincing Evidence," 29 Rutgers L. Rev. 1084, 1096–98; Dershowitz, "The Law of Dangerousness: Some Fictions About Predictions," 23 J. Legal Ed. 24; Diamond, "The Psychiatric Prediction of Dangerousness," 23 U. Pa. L. Rev. 439; Kozul, Boucher & Garofolo, "The Diagnosis and Treatment of Dangerousness," 18 Crime & Delin. 371, 392 (concluding that dangerousness can reliably be diagnosed); Rubin, "Prediction of Dangerousness in Mentally Ill Criminals," 27 Arch. Gen. Psychiat. 397; we are cognizant of the fact that without a strict scientific or legal formula upon which such determinations can be based, this problem must, to a considerable extent, be dealt with by the trial courts on a case-by-case basis. *State* v. *Krol,* 68 N.J. 236, 258–59, 344 A.2d 289.

finding of the trial court that the defendant's psychiatric history showed short periods of improvement always followed by lengthy periods of behavior and conduct which were the result of mental illness further supports the court's ultimate decision denying the defendant's release.

In his remaining assignments of error, the defendant challenges the conclusions reached by the trial court on the grounds that they are legally or logically inconsistent with the subordinate facts contained in the finding or are based upon an erroneous rule of law. The court's decision to deny the defendant's motion for revocation of his order of commitment was based upon its conclusions that the defendant suffers from a mental illness of long standing; that he has a poor understanding of his present condition; that his behavior remains unpredictable in the absence of a structured environment; that his difficulty in accepting authority would present a problem outside the hospital; that his history shows that a short period of improvement will be followed by lengthy periods of behavior and conduct resulting from mental illness; and that, as a result of his mental illness, the defendant's release would constitute a danger to the defendant and to others. From the facts found by the court, it is clear that those conclusions are amply supported and do not violate law, logic or reason. *Yale University* v. *New Haven,* 169 Conn. 454, 464, 363 A.2d 1108. We need not review other conclusions attacked by the defendant since doing so would not affect the final result in this case. *Lonergan* v. *Connecticut Food Store, Inc.,* 168 Conn. 122, 134, 357 A.2d 910; Maltbie, Conn. App. Proc. § 165.

In his brief to this court, the defendant has, for the first time, challenged the constitutionality of

General Statutes § 53a-47. No such claim of law was raised by the defendant at the hearing, and, consequently, there is no assignment of error concerning this issue. The rule providing that issues not raised in the trial court will not be considered on appeal; Practice Book, 1963, § 652; *Silverman* v. *St. Joseph's Hospital*, 168 Conn. 160, 176, 363 A.2d 22; *Pizzola* v. *Planning & Zoning Commission*, 167 Conn. 202, 209, 355 A.2d 21; applies even when the constitutionality of a statute is being challenged. *New Haven Savings Bank* v. *Valley Investors*, 174 Conn. 77, 84, 384 A.2d 321; *Morris* v. *Timenterial, Inc.*, 168 Conn. 41, 43, 357 A.2d 507. No new, unforeseeable constitutional right has arisen since the trial, and the record does not indicate a clear deprivation of a fundamental constitutional right and a fair trial so as to justify an exception to the above general rule. *State* v. *Evans*, 165 Conn. 61, 69–70, 327 A.2d 576.

Further, the defendant predicates his constitutional claims upon the assumption that his continued confinement could legally be based only upon the conclusion that he was a danger to himself.[6] Under this assumption, the defendant argues that § 53a-47 as applied to him violates due process and deprives him of the equal protection of the laws. As we have said, however, the trial court's conclusion that the defendant was both a danger to himself and to others was not without support and thus not erroneous. "[A] plaintiff, in challenging the constitutionality of a statute, must sustain the burden of proving that the effect or impact of the challenged statute on him adversely affects a con-

---

[6] In his reply brief to this court, the defendant concedes that no constitutional problems exist when § 53a-47 is applied to an individual proven to be a danger to others.

stitutionally protected right which he has. 'This means a right which he proves that he has under the facts of his particular case and not merely under some possible or hypothetical set of facts not proven to exist.' *Hardware Mutual Casualty Co.* v. *Premo,* . . . [153 Conn. 465, 471, 217 A.2d 698]." *Adams* v. *Rubinow,* 157 Conn. 150, 152, 251 A.2d 49; *Gentile* v. *Altermatt,* 169 Conn. 267, 307, 363 A.2d 1; *Kellems* v. *Brown,* 163 Conn. 478, 483, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678; 16 Am. Jur. 2d, Constitutional Law, § 119.

In view of the defendant's failure to raise those claims before the trial court and to establish that the alleged constitutional infirmity of § 53a-47 has directly prejudiced him under the facts of this case, we need not consider the constitutional questions now presented for the first time on appeal.

There is no error.

In this opinion the other judges concurred.