[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This proceeding is an appeal from the assessment of damages incident to a condemnation. As with a number of recent decisions; see, e.g.,Commissioner of Transportation v. Shea, 47 Conn. Sup. 418 (2002);Newington v. Estate of Young, 47 Conn. Sup. 65, 777 A.2d 219 (2000);Commissioner of Transportation v. Connemara Court, L.L.C.,46 Conn. Sup. 623, 763 A.2d 696 (2000); Bristol v. Milano,45 Conn. Sup. 605, 732 A.2d 835 (2000); the present case as well has also come to the court on the wrong procedural track, as a result of directions given by the court clerk on instructions from the civil court manager of the judicial branch division of court operations. It was not entered on the court records as a separate civil action and the entry fee required by General Statutes § 52-259 was not paid. Rather, the present appeal and application for review of the statement of compensation was filed, without payment of the statutory entry fee, as a further pleading in the matter, having the above title and docket number, that previously had been created for purposes of depositing with the clerk of the Superior Court, the assessed damages in the amount of $1900. SeeCommissioner of Transportation v. Shea, supra, 419; Newington v. Estateof Young, supra, 66; Commissioner of Transportation v. Connemara Court,L.L.C., supra, 623; Bristol v. Milano, supra, 605.
John B. April, the property owner, has appealed from the assessment of damages paid by the commissioner of transportation (COT) for the partial taking by eminent domain, pursuant to § 13a-73 (b) of the General Statutes, on September 7, 2001, of the premises hereinafter described found to be necessary for the layout, alteration, extension, widening, change of grade, reconstruction and improvement of the highway commonly known as U.S. Route 6. Said premises consist of a certain parcel of land situated in the Town of Brooklyn, County of Windham and State of Connecticut, on the northerly side of Present U.S. Route 6, Hartford Road, containing 2,485 square feet, more or less, bounded and described as follows and shown on the map hereinafter referred to: CT Page 735
SOUTHERLY by Present U.S. Route 6, Hartford Road, 225 feet, more or less;
WESTERLY by land now or formerly of George W. Kilton et al., 7 feet, more or less;
NORTHERLY by Owner's remaining land, 226 feet, more or less, by a line designated "Taking Line", as shown on said map; and
EASTERLY by land now or formerly of Joseph P. Dastous, Jr., et al., 15 feet, more or less.
Said premises are taken together with a right of entry to relocate stone wall, as more particularly shown on said map. Said right shall terminate automatically upon completion of said work by the State.
Said premises are more particularly delineated on a map entitled: "TOWN OF BROOKLYN MAP SHOWING LAM) ACQUIRED FROM JOHN B. APRIL BY THE STATE OF CONNECTICUT DEPARTMENT OF TRANSPORTATION RECONSTRUCTION OF U.S. ROUTE 6 February 2000 JAMES F. BYRNES, JR., P.E. — TRANSPORTATION CHIEF ENGINEER BUREAU OF ENGINEERING AND HIGHWAY OPERATIONS". Revised 7-31-01, Sheet 1 of 1, (19-92-14).
The above-described premises are taken subject to such rights and easements as appear of record.
Brooklyn is a small rural community in Windham County in the eastern portion of the state. Its classification is rural and suburban in nature. It is approximately 38 miles east of Hartford, 28 miles west of Providence, Rhode Island, 30 miles north of New London, and 30 miles south of Worcester, Massachusetts. It has a land area of 28.97 square miles and a population of about 7,173. Its principal industries are agricultural and the manufacture of electrical goods. Many small individual businesses are located along the back roads. The Brooklyn Correctional Center is one of its biggest employers.
The subject property is known as Nos. 372 and 376 Hartford Road, being U.S. Route 6 and running east and west through the center of the Town of Brooklyn. U.S. Route 6 predates the multi-lane interstate highway system and extends from Provincetown, Massachusetts, east and west through the center of Connecticut from Rhode Island to New York, across the country to San Francisco, California. It is the most direct route between Hartford and Providence. The improvement of a portion of this national highway, which is also the principal highway serving the area, in the center of the small, but significantly historical to state and nation, CT Page 736 town of Brooklyn, is the purpose of this eminent domain proceeding.
The property taken in this proceeding is located within the Residential — Agricultural (RA) zone. This zone is intended to be primarily for agricultural uses and for low density residential uses with a minimum lot size of 40,000 square feet, commonly called "one acre" zoning. Limited business enterprises that are located along the state highways may be allowed by special permit.
The appraisers for the property owner and COT agreed that the highest and best use of the property is for its continued present use of two single-family homes on a small rural agricultural or farm lot in conformity to the present zoning requirements. They also agreed that the cost and income capitalization approaches were not applicable to estimating the market value of the subject property, relying instead, on utilizing the sales comparison approach. The court concurs in these conclusions.
Before the taking, the subject site consisted of 1.70 acres of Residential — Agricultural zoned land on Hartford Road (U.S. Route 6), a short distance westerly from the center of Brooklyn. The land is flat in grade along Route 6, has 225 feet frontage, and is improved with two single-family homes fronting on the highway. The property has an asphalt driveway running from the highway to the area between and alongside the two detached residences. There was a thick grouping of mature spruce trees along the highway which afforded privacy and screened the larger home, No. 376 Hartford Road, from highway traffic, and a stone wall, a unique vestige of colonial times in Connecticut and other New England towns, that runs 53 feet along the easterly edge of the highway, partially screening the smaller home, No. 372 Hartford Road, from the roadway. The uniqueness of the stone wall is recognized in the State's taking of the land "together with a [temporary] right of entry to relocate [this] stone wall as more particularly shown on said map. "
After the taking of a widening strip of the highway frontage, seven feet in depth at the western or open end of the property, and fifteen feet at the eastern or residential end, the site was reduced to 1.64 acres in area. The taking area included a strip of paved parking area, which reduced the parking capacity of the lot by one vehicle. The taking area also impacted a row of blue spruce trees originally planted as a privacy barrier from local and long distance traffic. While these trees will not be lost in their entirety, substantial trimming and pruning of them will be required, reducing the cosmetic and scenic value of the trees, and the effectiveness of their privacy barrier because of the taking. The front lawn along the roadway is also within the taking, as CT Page 737 well as a ten inch maple tree at the southwest corner of the lot and a rhododendron bush near the opposite southeast corner.
The owner's appraiser, Robert J. Mulready, estimated the damages due to the taking in two parts. First, he calculated the damages attributed only to the land taken by the State. For this he analyzed six land sales, two on Route 169 in Brooklyn, two on Route 6 in the easterly adjoining town of Killingly, one on Route 97 in the westerly adjoining town of Hampton, and one on Route 198 in Chaplin adjoining Hampton. With adjustments for the usual appraisal factors, he found from these comparable sales that the fair market value of the land in the subject site before the taking was $26,000, or 0.3511¢ per square foot.
In his after taking value computation of the land component, the owner's appraiser utilized the same six comparable sales. After his adjustment of appraisal factors, he estimated the market value of the subject land after the taking to be $25,127, resulting in damages pertaining only to land taken to be $873. The cost of replacing the maple tree on the land taken with a smaller available tree 14 feet in height, he estimated at $750, and the rhododendron plant replacement at $200, for a combined further land damage estimate of $950.
The second component of his damage estimate related to the loss or damages resulting from the taking to the subject site with its improvements thereon. For this he analyzed eight comparable improved property sales, six in Brooklyn, of which two were on Route 6, and four on Route 169, north and south of the site; one on Route 6 in adjoining Hampton, one town west of the site; and one on Route 198 in Chaplin, two towns west of the site. With adjustments for the usual appraisal factors, he found from these comparable sales that the fair market value of the improved subject site before the taking was $138,317, rounded to $138,300.
In his after taking value computation of the improved site, he utilized the same eight comparable sales. With the usual appraisal adjustments, he estimated that the market value of the improved subject site was $125,221, rounded to $125,200. From these values, he estimated the severance damages to be $13,100. Adding the cost for replacement of the maple tree and rhododendron bush, he found the total damages due to the taking to be $14,050.
The state's appraiser, James G. Sauve, utilized three sales of vacant land, varying in size from about one acre to two acres, all located in Brooklyn, as comparables. All sales were adjusted downward to account for their superior locations in his valuation before taking. In his opinion, CT Page 738 the subject was located on a heavily traveled state highway, while the comparables were on side streets and buffered from highway traffic. Upward adjustments were made to each sale to reflect the contributory value of site improvements within the taking area. These included the loss of one parking space, and the loss or alteration of privacy shrubs and lawn area. With further adjustments for differences in size, he estimated the market value of the subject land only as of June 15, 2000, to be $26,300. The buildings were not valued, being assigned an "X" value.
The taking area consisted of a strip of land along Route 6 ranging in width from 7 feet on the west to 16 feet on the east, encompassing an area of 2,485 square feet, more or less. The taking area included a strip of paved parking area, thereby reducing the parking capacity by one vehicle. The taking area also impacted a row of blue spruce trees originally planted as a privacy barrier. Substantial alteration of trees is required as a result of the taking, thereby reducing the scenic appeal of the trees and the effectiveness of the privacy barrier. A lawn area was within the taking. He estimated as noncompensable the right to reconstruct the 52 linear feet of stone wall. Utilizing the same three comparable sales and adjustments as in the pretaking valuation, he estimated the after taking valuation of the subject land only as of June 15, 2000, to be $24,400, resulting in damages from the taking to be $1,900.
"When only a part of a tract is taken for the public use, `just compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. Bowenv. Ives, 171 Conn. 231, 238, 368 A.2d 82; Meriden v. HighwayCommissioner, 169 Conn. 655, 659, 363 A.2d 1094. `The ordinary rule for measuring damages where a portion of a tract of land is taken is to determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value.' Lefebrve v.Cox, 129 Conn. 262, 265, 28 A.2d 5 [1942]. The court should consider any and all damages which will foreseeably follow from the proper consideration of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking. Budney v.Ives, 156 Conn. 83, 88, 239 A.2d 842." D'Addario v. Commissioner ofTransportation, 172 Conn. 182, 184-85, 374 A.2d 163 (1976); Darling v.Waterford, 7 Conn. App. 485, 486 (1986).
Under our law, a judge trial referee sitting as a court on appeals in CT Page 739 condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 382, 388
(1989); Birnbaum v. Ives, 163 Conn. 12, 21-22 (1972); Feigenbaum v.Waterbury, 20 Conn. App. 148, 153 (1989). It is his task to reach a result that gives the plaintiffs, as nearly as possible, a fair equivalent in money as just compensation for the property taken. Mathisv. Redevelopment Agency, 165 Conn. 622, 623 (1973); Feigenbaum v.Waterbury, supra, 153-54.
The elements of the owner's damage due to the taking of September 7, 2001, are: (1) loss of fee to 2,485 square feet, more or less, fronting on Hartford Road, U.S. Route 6, a heavily traveled transcontinental highway from Provincetown, Massachusetts, to San Francisco, California, running east and west through the center of Connecticut from Rhode Island to New York, and being the most direct route between Hartford and Cape Cod; (2) a corresponding reduction in area of the front yard and lawn; (3) reduction in the distance of No. 376 Hartford Road from the highway from 62 feet to 53 feet, a 9 foot reduction; (4) reduction in the distance of No. 372 Hartford Road from the highway from 65 feet to 55 feet, a 10 foot reduction; (5) a resulting loss of paved amesite apron and driveway and widening of the driveway approach to the property; (6) loss of paved parking area for one vehicle; (7) the relocation and reconstruction of the existing stone wall along 52 linear feet of the adjoining roadway; (8) the impact upon a row of blue spruce trees planted as a privacy barrier to No. 376 Hartford Road, requiring substantial trimming and pruning, and reducing the scenic appeal of the trees and the effectiveness of their privacy shield; and (9) the loss of a 10 inch maple tree at the southwest corner of the site and a mature rhododendron bush at its southeast corner.
After viewing the site of the subject property, and after giving due consideration to the opinions of expert witnesses and to a knowledge of the elements that establish value, I find that the before taking value of the subject property was $130,000, and that the after taking value of the subject property is $121,100. Damages, therefore, are assessed at $8,900.
Judgment may enter for the appellant in the amount of $8,900, less $1,900 previously paid, or an excess of $7,000, with interest on such excess at 8% per annum from the date of taking on September 7, 2001, to the date of payment, together with costs and a reasonable appraisal fee of $2,500.
 William C. Bieluch Judge Trial Referee CT Page 740
[EDITORS' NOTE: This page is blank.] CT Page 741