FRED J. MINICUCCI ET AL. *v.* COMMISSIONER
OF TRANSPORTATION
(13587)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued February 2—decision released June 6, 1989

*Leonard Jacobs,* with whom, on the brief, was *Jean T. Walker,* for the appellants (plaintiffs).

*Lawrence G. Widem,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* acting attorney general, and *Joseph I. Lieberman,* former attorney general, for the appellee (defendant).

COVELLO, J. On October 20, 1986, the defendant, the commissioner of transportation, acquired a portion of the plaintiffs' land by condemnation and assessed the plaintiffs' damages at $38,000.[1] General Statutes § 13a-73 et seq. The plaintiffs appealed to the Superior Court for a reassessment of damages and the case was referred to *Hon. Charles S. House,* state trial referee. On March 2, 1988, the trial referee, having heard the parties, concluded that the plaintiffs' damages as the result of the taking were $62,000 and rendered judgment thereon.[2] The plaintiffs appealed that decision to the Appellate Court and we, thereafter, transferred the appeal to ourselves. Practice Book § 4023.

The plaintiffs claim that the trial referee erred in: (1) failing to value the property based upon its potential for subdivision into residential lots; (2) failing to consider the concurring opinions of both the plaintiffs' and the defendant's appraisers concerning the proportion-

---

[1] The defendant deposited $38,000 with the clerk of the Superior Court. That sum had been withdrawn by the plaintiffs, Fred J. Minicucci and Richard B. Hayes.

[2] Referee House ordered the defendant to pay the plaintiffs $24,000 in addition to the $38,000 already received by them, together with interest on the $24,000 at the rate of 10 percent from the date of the taking to the date of payment, together with costs and an allowance of $2000 toward appraisal fees.

ate reduction in value of the residual property left after the taking; and (3) in prejudging the evidential value of the testimony of the plaintiffs' appraiser as a basis for valuing the property. We find no error.

The relevant facts are as follows. The property taken consisted of 9.5 acres of a 13.65 acre parcel located on the northerly side of route 6 in Bolton. The subject property contained 1370 feet of frontage on route 6, and is located in an R-1 single family residential zone. At the time of the taking the property was undeveloped, heavily wooded and rose sharply from the existing grade of route 6.[3] The parcel contained wetlands and was spiraled through with a rock ledge formation. After the taking, the remaining 4.15 acres will have a four lane highway on one side and route 6 on the other side.

I

The plaintiffs first claim that the trial referee erred by refusing to value the property before the taking based upon its potential for subdivision into residential building lots. We do not agree.

"The owner of land taken by condemnation is entitled to be paid just compensation. Conn. Const. art. I § 11. If the taking is partial, the usual measure of damages is the difference between the market value of the whole tract with its improvements before the taking and the market value of what remained of it thereafter." *Lynch* v. *West Hartford,* 167 Conn. 67, 73, 355 A.2d 42 (1974). "The 'fair market value' is the price that a willing buyer would pay a willing seller based on the highest and best possible use of the land assuming, of course, that a market exists for such optimum use." *Mazzola* v. *Commissioner,* 175 Conn. 576, 581–82, 402 A.2d 786 (1978). The plaintiffs argue that the highest and best possible

---

[3] There is as much as a 125 foot difference between the elevation of route 6 and the subject property.

use of the subject property was as a residential subdivision and therefore the trial referee should have considered this potential in his decision.

"[C]ourts have uniformly adopted the approach that *raw land* as such, *with little or no improvements or preparation for subdivision* may not be valued as if the land were in fact a subdivision . . . . The accepted rule for the evaluation of such land, therefore, is that the land will be considered in its present condition as a whole, with consideration given to any increment or enhancement in value due to the property's *present adaptability* to subdivision development." (Emphasis added.) 4 P. Nichols, Eminent Domain (3d Ed.) § 12.3142 [1] [a], pp. 12-335–356. In determining its highest and best use the trial referee must consider whether there was a reasonable probability that in the reasonably near future the subject property will be subdivided. *Budney* v. *Ives*, 156 Conn. 83, 239 A.2d 482 (1968). The trial referee must make this determination not only from the testimony and physical evidence presented, but also from his or her own personal observation of the property. See General Statutes § 13a-76.

Examination of the appraisal reports and numerous photographs in evidence discloses that the subject property obviously contained a significant quantity of rock, as there are visible outcroppings of ledge along route 6 and other portions of the land. The subject property rises sharply from the existing grade of route 6 to a plateau area approximately 30 to 40 feet above the street grade within a horizontal distance of 200 to 250 feet from the road. The land is thereafter fairly level for approximately 80 to 100 feet and then rises again another 20 to 24 feet in the rear. The plaintiffs argue that this land could be divided into six residential lots fronting along route 6, each consisting of approximately two acres.

The trial referee found that the presence of the steep slope and rocky conditions made "a decision as to the actual damages caused by the taking" to be one of particular difficulty. Despite the fact that the plaintiffs had owned this property for fourteen years, there is no evidence that a subdivision application was ever filed or a plan even prepared. There was no evidence as to the excavation costs incident to site preparation. No borings were taken to determine to what extent the significant levels of rock present would impact the cost of preparing the land for single family residential development. Thus, while confronted with a visually determinable impediment to the development of the property, the trial referee was given no hard evidence as to the cost of dealing with these very apparent problems. "Where the use appears to be subject to certain restrictions or limitations the trier must first determine whether these impediments do in fact exist and if so whether it is reasonably probable that they may be removed in the near future." *Mazzola* v. *Commissioner,* supra, 582. This being the case, we conclude that the trial referee clearly acted within his broad discretion in these matters in rejecting the claim that the property should be valued as subdividable. "[A]lthough the possibility of a change . . . always exists in some degree, it [is often] difficult to prove that such a possibility has become a reasonable probability." *Budney* v. *Ives,* supra, 89.

In view of the evidence presented, and the lack thereof, it was well within the referee's discretion to conclude that it was not reasonably probable that the land would in fact be subdivided in the reasonably near future. Therefore, we conclude that the trial referee did not err in failing to value the subject property as a potential subdivision.

## II

The plaintiffs next claim that the trial referee erred in failing to consider the concurring opinions of both the plaintiffs' and the defendant's appraisers regarding the proportionate reduction in value of the residual property due to the taking. We do not agree.

At the hearing before the trial referee, the plaintiffs' appraiser, Thomas Ringrose, testified that the value of the property before the taking was $273,000, the value of the property after the taking was $70,400, and thus, the damage from the taking was $202,600. The defendant's appraiser, James B. Blair, testified that the value of the property before the taking was $63,800, the value after the taking was $18,200, and thus, the plaintiffs' damages as a result of the taking would be $45,600. In a memorandum of decision, the trial referee concluded that the value of the property before the taking was $120,000, and the value after the taking was $58,000. Accordingly, the referee concluded that the plaintiffs' damages from the taking were $62,000. The plaintiffs claim that both appraisers concurred that the value of the residual property was approximately 26 to 29 percent of the value of the original property. The trial referee, however, found that the value of the residual property was 48 percent of the value of the original property.[4] The plaintiffs argue that

---

[4] The trial referee and the two appraisers established the differing values as follows:

|  | Trial Referee | Plaintiffs' Appraiser | Defendant's Appraiser |
|---|---|---|---|
| Original Value | $120,000 | $273,000 | $63,800 |
| Residual Value | $58,000 | $70,400 | 18,200 |
| Percentage of Original Value | 48% | 26% | 29% |

had the trial referee concluded that the residual value was between 26 and 29 percent, as claimed by both appraisers, then the residual property would have been valued at between $31,200 and $34,800. Hence, the plaintiffs' damages would have been between $88,000 and $85,000, and not $62,000 as the trial referee concluded.

"Under our law, a state referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises. . . . Thus there is effective legislative sanction for the authority of the referee independently to determine a value for condemned property which is less than that . . . agreed on between the condemnee and the taking authority." *Birnbaum* v. *Ives,* 163 Conn. 12, 21–22, 301 A.2d 262 (1972). Here, the trial referee viewed the premises, heard all the evidence presented by the parties, studied the appraisal reports and made his own independent determination of value. "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980). We find no such error here.

## III

The plaintiffs' final claim is that the trial referee erred by prejudging the evidential value of the testimony of the plaintiffs' appraiser as a basis for valuing the property. We do not agree.

At the time of the introduction of the plaintiffs' appraisal report, the defendant's attorney conducted

a voir dire examination of the appraiser concerning the report's content. The defendant's attorney asked whether all of the sales used in the witness' appraisal were "lot sales." When the appraiser replied in the affirmative, the defendant's attorney objected to the introduction of the appraisal report "coming in on lots." The trial referee stated, "[w]ell, it certainly substantially diminishes the value of the evidence but I think it is—I can't say it's completely irrelevant and I will admit it for whatever weight I feel it should be given." This, of course, is all that is asked of a trier of fact. "The weight [to be] given the evidence before it is within the sole province of the trial court." *Timm* v. *Timm*, 195 Conn. 202, 210, 487 A.2d 191 (1985). The court's remark was a correct statement of the applicable law.

There is no error.

In this opinion the other justices concurred.