[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by Robert J. Coollick and Linda A. Coollick from the assessment of damages in the amount of $121,000 paid by the defendant for the taking by eminent domain on November 23, 1994, of their property at 583 North Windham Road, consisting of land and improvements thereon, in the Town of Windham. This was a total taking for the layout, alteration, extension, widening, change of grade and improvement of the highway commonly known as Route 6.
Said premises are situated on the southerly; side of Present U.S. Route 6, and are bounded and described as follows:
Northwesterly, northeasterly and northwesterly again — by Present U.S. Route 6, a total distance of 140 feet, more or less;
Northeasterly again — by Present Windham Center Road, Conn. Route 203, a total distance of 188 feet;
Southwesterly — by land now or formerly of Ruby Hill, 165 feet, more or less;
Westerly — by land now or formerly of Daniel P. Calderwood et al., 99 feet.
Said parcel contains an area of 21,152 square feet, being 0.486 of an acre, together with the buildings located thereon and all appurtenances, all of which are more particularly shown on a map entitled: TOWN OF WINDHAM MAP SHOWING LAND ACQUIRED FROM ROBERT J. COOLLICK ET AL BY THE STATE OF CONNECTICUT RECONSTRUCTION OF U.S. ROUTE 6 SCALE: 1"=40' APRIL 1994 JAMES F. CT Page 12949 BYRNES JR. TRANSPORTATION CHIEF ENGINEER BUREAU OF ENGINEERING AND HIGHWAY OPERATIONS". (163-111-29).
Said premises are subject to an agreement giving the owners of the property abutting on the west the right to use the driveway along the southwesterly boundary of the property taken.
The subject property is located at the junction of two highways, fronting 140 feet on U.S. Route 6, a major highway in the Town and County of Windham running east and west across the center of the state from Rhode Island to New York, and 188 feet on Connecticut Route 203. This intersection marks the center of the area of the town known as North Windham. A post office and fire station are located nearby. The area is commercial and residential in nature. Its zone is Commercial 1. The property taken is legally nonconforming to the zoning requirements.
The land improvements consist of a two-story four-family dwelling containing one 4-room, two 3-room and one 1-room apartments, each with a bath. Originally built for a single family about 1880, the structure, and its addition about 1950, were converted to a two-family dwelling, and later to four apartments. The dwelling improvements consist of an oil-fired baseboard heating system, copper wiring and 200 amperes electrical wiring.
An inground swimming pool, 30 feet long and 16 feet hide, was built on the grounds in 1970. It is vinyl lined on fiberglass and concrete. In addition to its recreational use, the swimming pool has been utilized by handicapped tenants for therapy.
The land is level and slightly above current road grade. Water, gas and sanitary sewers are not available. The well and septic tank were installed about 1983. The driveway and walks are constructed of amesite. The dwelling and swimming pool are set back from the two intersecting highways, leaving a large triangular front yard. Landscaping consists of lawn, trees and shrubs.
Both appraisers agree, and the court so finds, that the highest and best use of the subject property would be to continue its present use as a multifamily dwelling.
The plaintiffs' appraiser based his estimate of fair market value upon an income approach because this is an investment type of property in a commercial zone and would be purchased by a prudent buyer for its income. The cost approach was not used because of the age of the building. The market comparison approach was not utilized because his search did not reveal any sales of comparable properties in a commercial zone. CT Page 12950
In this analysis, the appraiser considered the actual annual rental income of $25,980 as indicative of a reasonable estimate of the gross income for the property. Expenses considered for taxes, insurance and heat were those actually incurred. Electrical, repair and replacement costs were estimated. Total expenses were calculated at $5,450. Using a 2% vacancy estimate and a capitalization rate of 11.15%, he found the fair market value of the property to be $179,462, rounded to $180,000.
The defendant's appraisal was made by an employee of the defendant. As did the plaintiffs' appraiser, he excluded the cost approach because of the age of the dwelling. Unlike the plaintiffs' appraiser, however, he relied upon the comparable sales analysis in his fair market valuation of $121,000, the damages found and paid by the defendant.
Two of the sales utilized for comparison were three-family dwellings and the third was a four-family house in need of much refurbishing. They were located in the City of Willimantic, the older section of town, and were distant from the subject property. They were in residential districts and not comparable in location to the subject's commercial zone.
To reconcile this valuation, the defendant's appraiser also utilized the income approach. His value estimate based on income was determined to be $116,000. In his opinion, however, the sales comparison approach resulting in a valuation of $121,000 was deemed to be the best.
Comparing the defendant's income analysis with that of the plaintiffs, the following differences are noted: (1) annual rents are estimated at $20,700; (2) the vacancy and collection rate is 10%; (3) expenses are calculated at $6,205; (1) taxes of $1,768 are overlooked; and (5) the capitalization rate is 10.7%.
The plaintiffs' federal income tax return for the year 1994 was not available as evidence at the time of this hearing. However, Schedule E reporting rental income and expenses for the years 1991, 1992 and 1993 were introduced as exhibits by the defendant. These showed that the actual gross annual rental income averaged $19,817 for these three years. They also indicated that the actual operating expenses relevant for income capitalization averaged $8,431 annually for the same period.
A state referee sitting as a court in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses and claims of the parties. He is charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of all circumstances, the CT Page 12951 evidence, his general knowledge and his viewing of the premises. Minicucciv. Commissioner of Transportation, 211 Conn. 388 (1989); Birnbaum v. Ives,163 Conn. 12, 21-22 (1972); Feigenbaum v. Waterbury, 20 Conn. App. 148, 153
(1989). It is his task to reach a result that gives the plaintiff, as nearly as possible, a fair equivalent in money as just compensation for the land and building taken. Mathis v. Redevelopment Agency, 165 Conn. 622, 623
(1973); Feigenbaum v. Waterbury, supra, 153-54.
Based upon a full consideration of the evidence offered by the parties, a careful viewing of the subject premises and its surrounding area, and a review of relevant factors such as the highest and best use of the property, its size, shape, topography, zoning classification, location and proximity to commercial developments, I make the following findings of fact and conclusions of law:
 1. The best method of estimating the fair market value of the subject property is the income capitalization approach;
2. A fair and reasonable capitalization rate is 10.7%;
3. Fair, reasonable and actual annual rental income is $25,500;
4. A reasonably expected vacancy and rental loss is 5% or $1,275;
5. Effective gross income reasonably expected annually is $24,225;
6. Fair and reasonably anticipated annual expenses are $8,684;
7. Net operating annual income reasonably anticipated is $15,541;
8. NOI/Rate = estimated fair market value of $145,243 (Rd. $145,250).
Judgment may enter for the plaintiffs in the amount of $145,250, less $121,000 already paid, or an excess of $24,250, with interest on such excess from the date of taking to the date of payment at the rate of 8% per annum, together with costs, and a reasonable appraisal fee of $2,000.
William C. Bieluch State Trial Referee