[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal requesting a review and reassessment of the statement of compensation made by the Commissioner of Transportation in regard to the taking of the plaintiffs property located on Rosette Street in the City of New Haven. Initially the Commissioner determined the fair compensation was $30,000 and deposited that sum with the clerk of the court. Although dissatisfied with that assessment of the value of her property, and eventually requesting this review and reassessment of its value, the plaintiff, as provided by statute, applied for payment of the deposit which was paid to the banks holding the mortgage on her property. At the time of trial of this appeal the Commissioner disclosed a change in his opinion in the value of plaintiffs property, and reduced his finding of far compensation for the taking to $18,000.
The State's appraiser made two reports on this taking. The first one is dated July 17, 1999 (Exhibit 0) and the second one is dated January 10, 1997 (Exhibit P). The taking was on January 30, 1997.
The acquisition of the plaintiffs property is in conjunction with the State's replacement project of a wall abutting the Metro-North Railroad which is the rear line of plaintiffs property. It should be noted that in the residential areas of the City of New Haven the train tracks are not at street level but are bedded below street level to the extent that the tops of trains are not visible to residents such as the plaintiffs unless you are looking over the wall that is being repaired. The taking date of plaintiffs property was January 30, 1997. Prior to that date the State's appraiser, on July 17, 1996, filed a report, State's Exhibit 0 concerning his opinion of the value of the plaintiffs property. He found that the property has a 35 foot frontage on Rosette Street, 75 foot deep on one side and 60 feet CT Page 9651 on the other, with the rear boundary being 35 feet on the Metro-North Railroad line. The property was but a short distance from the New Haven Railroad Station. The house was a two-family, (see, Picture Exhibit 0) located in a residential zone. It occupied 2,226 square feet of the land which was 2,342 square feet.
The second floor was occupied. The first floor was not occupied. At the time of the appraiser's inspection, the first floor was in the process of being renovated. However, the renovation process had stopped because they had received notice from the State that the house would be acquired for the railroad project. The attic was occupied by a tenant. However, the appraiser found this to be an illegal use and put no value on it. The house had a full basement which was unfinished. Heat was by oil and/or gas. Conditions, inside and out, were described as fair. The last city revaluation of the property was in 1991. It was assessed at $88,100 and the taxes for the year 1995 were $2,213.08.
In this report (State's Exhibit 0) of July 17, 1996 the appraiser relies on three comparables that are different from the comparables he relies on in his second report. In this report with regard to his third comparable, he states that "This house should be totally rehabilitated." The functional utility and condition of the house is so bad that he adds a total of $30,000 to its sale price of $5,000 to arrive at a fictional value of $30,950. It is difficult to understand what weight this court can give to this comparable. This sale was a sale by a mortgage company.
In this July 17, 1996 report of the State's appraiser (State's Exhibit 0) he remarks, "There is a paucity of arms length two-family sales available in the immediate neighborhood. The market is predominantly foreclosure sales." Yet his second comparable is a bank sale. Furthermore, his first comparable is not only from a mortgage company, it is from the same mortgage company as made the sale in his third comparable.
Approximately six months after submitting his report of July, 1996, the State's appraiser, on January 10, 1997, filed a second report. With regard to the plaintiffs property his findings in his first report, the difference is found in the fact that he uses a different set of properties for comparables.
In his second report, State's Exhibit P, the #1 and #2 CT Page 9652 comparables are both bank sales. Assessment values for these three comparables were $65,870, $82,590 and $73,330.
The State's appraiser speaks of these comparables in his report as follows: "The sales used are considered to be the best sales available. There is a paucity of arms length two family sales available in the immediate neighborhood. The market is predominantly foreclosure sales. . . . Value set in this appraisal is in the present condition with the first floor uninhabitable and rehabilitation of the property needed."
The plaintiffs property was occupied and was not up for sale. The State's appraiser testified that the 1st floor was being redone.
The court has examined the comparables relied on by the plaintiffs appraiser. We note that two of the comparables are in a different and distant area of the City of New Haven. The other two comparables are located in the same section of the city as the plaintiffs property. The data furnished would indicate a different level of care and operation from the plaintiffs property, plus areas of rehabilitation previously noted to it, all of which reflect on the building's value.
"The owner of land taken by condemnation is entitled to be paid just compensation. . . . The amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking."Minicucci v. Commissioner of Transportation, 211 Conn. 382, 384.
The court finds that the plaintiff has been aggrieved by the assessment of damages filed by the defendant.
Accordingly, the damages awarded to the plaintiff are reassessed by increasing them from a total of $18,000 to a total of $42,000.
Appraisal fee in the amount of $1,000 is awarded to the plaintiff.
Harold M. Mulvey Judge Trial Referee CT Page 9653