[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In Docket No. 582684, the plaintiffs have appealed from the assessment of damage paid by the defendant in the amount of $21,700 for the taking by eminent domain on July 29, 1998, pursuant to General Statutes Section13a-73 (b), of a portion of their property found to be necessary for the layout, alteration, extension, widening, change of grade and improvement of the highway commonly known as Spencer Street, State Route 502. Said premises consist of three parcels situated in the Town of Manchester, on the southerly side of Spencer Street, having a total area of 3,683 square feet, more or less, bounded and described as follows and shown on a map hereinafter referred to:
Parcel 1, containing 23 square feet, more or less:
NORTHWESTERLY — by Present I-384 Ramp, 10 feet, more or less; EASTERLY — by land now or formerly of the heirs of Harold Basser et al., 5 feet, more or less; SOUTHERLY — by Owners' remaining land, 9 feet, more or less, by a line designated "Taking Line," as shown on said map.
Parcel 2, containing 3,091 square feet, more or less:
NORTHERLY — by present Spencer Street, S.R. 502, 472 feet, more or less; CT Page 6520 EASTERLY — running to a point; SOUTHERLY — by Owners' remaining land, a total distance of 473 feet, more or less, by a line designated "Taking Line," as shown on said map; WESTERLY — by land now or formerly of Shell Oil Company, 8 feet, more or less.
Parcel 3, containing 569 square feet, more or less:
NORTHEASTERLY — by the intersection of Present Spencer Street, S.R. 502 and Present Hillstown Road, along an arc of a curve, having a total distance of 62.29 feet, more or less; SOUTHWESTERLY — by Owners' remaining land, 51 feet, more or less, by a line designated "Taking Line," as shown on said map.
Said premises were taken together with the following rights and easements under, over and across portions of Owners' remaining land:
Defined traffic easements for the installation and maintenance of traffic appurtenances within areas totaling 2,173 square feet, more or less, located between and opposite approximate Stations 1 + 120 and 1 + 152.5 right, Base Line Present Spencer Street, S.R. 502, as shown on said map.
A right of entry to grade, construct driveways and sidewalk ramp as more particularly shown on said map. Said right shall terminate automatically upon completion of said work by the State.
Said premises are more particularly delineated on a map entitled: "TOWN OF MANCHESTER MAP SHOWING LAND ACQUIRED FROM MYRON L. KAUFMAN ET AL BY THE STATE OF CONNECTICUT DEPARTMENT OF TRANSPORTATION SAFETY IMPROVEMENT ON S.R. 502 AT K-MART DRIVE AND HILLSTOWN ROAD May 1997 JAMES F. BYRNES, JR., P.E. — TRANSPORTATION CHIEF ENGINEER BUREAU OF ENGINEERING AND HIGHWAY OPERATIONS". Last Revised 3/19/98, Sheet 1 of 1, (76-183-4).
The premises taken are portions of the premises contained in a Certificate of Devise recorded on January 6, 1989 in Volume 1285 at Page 111 of the Manchester Land Records.
In Docket No. 582685, the plaintiffs have appealed from the assessment of damage paid by the defendant in the amount of $1,100 for the taking by eminent domain on July 24, 1998, pursuant to General Statutes Section 13a-73
(b), of a portion of their property found to be necessary for the layout, alteration, extension, widening, change of grade and improvement of the CT Page 6521 highway commonly known as Spencer Street, State Route 502. Said premises are situated in the Town of Manchester, on the southerly side of Spencer Street, containing 216 square feet, more or less, bounded and described as follows and shown on a map hereinafter referred to:
NORTHERLY — by Present Spencer Street, S.R. 502, 50 feet; EASTERLY — by land now or formerly of Shell Oil Company, 3 feet, more or less; SOUTHERLY — by Owners' remaining land, 50 feet, more or less, by a line designated "Taking Line", as shown on the map hereinafter referred to; WESTERLY — by land now or formerly of Myron L. Kaufman et al, 5 feet, more or less.
Said premises were taken together with the following right under, over and across portions of Owners' remaining land:
A right of entry to construct driveway as more particularly shown on said map. Said right shall terminate automatically upon completion of said work by the State.
Said premises are more particularly delineated on a map entitled: "TOWN OF MANCHESTER MAP SHOWING LAND ACQUIRED FROM HEIRS OF HAROLD BASSER ET AL BY THE STATE OF CONNECTICUT DEPARTMENT OF TRANSPORTATION SAFETY IMPROVEMENT ON S.R. 502 AT K-MART DRIVE AND HILLSTOWN ROAD APRIL 1997 JAMES F. BYRNES, JR., P.E. — TRANSPORTATION CHIEF ENGINEER BUREAU OF ENGINEERING AND HIGHWAY OPERATIONS'. Sheet 1 of 1, (76-183-6).
Said premises taken are portions of the premises contained in a Quitclaim Deed recorded on September 8, 1977 in Volume 645 at Page 9 of the Manchester Land Records.
The two takings relate to separate portions of a single shopping center development. The separate proceedings were required because, at the time of their taking, the common unity of ownership of the whole had been broken by the uncompleted probate administration of the estate of a deceased partner holding title to a portion of the shopping center development. Thereafter, and before the commencement of the hearing on the appeals from the respective assessments, title to the subject properties was unified in the names of the plaintiffs, and the two properties were considered as the subject of a single taking at trial. They will be valued as one parcel of land taken by eminent domain from the shopping center now jointly owned by the plaintiffs.
The subject property is located at 210 and 262 Spencer Street in the south-central entrance to Manchester from the west. The neighborhood is CT Page 6522 served by Interstate 384, the first exit/entrance off nearby Interstate 84, providing good access to the entire regional highway system. Intersecting Hillstown Road provides access over I-384 to the southwestern section of the town. The property is about three miles west of the town center. Spencer Street is a major local thoroughfare running in an east-west direction. It is a four-lane road in the immediate area of the subject property. There are no sidewalks. Retail commercial uses on the property and in the immediate area make this a small retail commercial center, one closest to the East Hartford and Hartford area, as well as to the southwestern area of Manchester.
Subject site is located on the south side of Spencer Street, at its intersection with Hillstown Road. Its area before the taking was 8.608 acres, or 374,964 square feet, with 545 total feet of frontage on Spencer Street and 540 feet of frontage on Hillstown Road. Additional frontage on I-384 is non-accessible. There are two vehicle access areas on Spencer Street, and one on Hillstown Road. The parcel is irregular in shape. Its topography is level at Spencer Street and then gently descends to the rear, or southerly property line.
The property is located in a B2 Business Zone. Before the taking, the property was a conforming legal use. As a result of the taking, it became a nonconforming use. Numerous retail type uses are permitted in this zone. The buildings on the subject property were not adversely affected by the takings. All public utilities are available and were unaffected by the condemnation proceedings. There are no sidewalks on the Spencer Street frontage.
The total taking area of the four parcels is 3,899 square feet. It is composed of narrow strips of land along Spencer Street. The first, being a small triangle containing 23 square feet, runs 10 feet along the exit ramp of I-384, to its intersection with Spencer Street; it then continues easterly along Spencer Street 50 feet to land now or formerly of Shell Oil Company, averaging 4 feet, more or less, in width, and containing 216 square feet. The second, runs easterly from said land of Shell Oil Company along Spencer Street 472 feet, more or less, to a point, being 8 feet, more or less, in width, except at its eastern terminus, which comes to a point, and containing 3,091 square feet. The third, being easterly at the intersection of Spencer Street and Hillstown Road, runs 62.29 feet, more or less, along the arc of a curve and contains 569 square feet.
The plaintiffs' appraiser, Robert J. Flanagan, was of the opinion that, taking into consideration the character and nature of the neighborhood, zoning, the physical characteristics of the land and buildings, and all other factors which affect value, the highest and best use of the subject CT Page 6523 property before the taking was its existing shopping center use plus additional development of the Spencer Street frontage for a free-standing building in the 2,500 to 3,000 square foot size range.
The highest and best use of the property at the time of the taking, in the opinion of the defendant's appraiser, Thomas L. Fox, was a continuation of the present commercial use as a shopping center. The court agrees with this conclusion and finds that the highest and best use of the property was a continuation of its present use as a shopping center.
The plaintiffs are entitled to be paid just compensation, as the owners of land taken by condemnation. "`The amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking.' Greene v. Burns,221 Conn. 736, 745. The probability of a zone change that could affect the price may properly be considered in the determination of the fair market value. Transportation Plaza Associates v. Powers, 203 Conn. 364,375, 525 A.2d 68 (1987). `[T]he true issue is, not the value of the property for the use which would be permitted if a change in zone was made, but the value of the property as zoned at the time of the taking as it is affected by the probability of a change. Budney v. Ives, [156 Conn. 83, 89, 239 A.2d 482 (1968)].' Greene v. Burns, supra, 745.South Farms Associates Ltd. Partnership v. Burns, 35 Conn. App. 9, 15.
"The concept of highest and best use, chiefly employed by appraisers as a starting point in estimating the value of real estate, concerns the use that will most likely produce the highest market value, greatest financial return, or the most profit from use of that property. Robinsonv. Westport, 222 Conn. 402, 405-406, 610 A.2d 611 (1992). `The questions of the highest and best use of property and of the reasonable probability of a zone change are . . . questions of fact for the trier. . . .'"Greene v. Burns, supra, 221 Conn. 748." South Farms Associates Ltd.Partnership v. Burns, supra, 16.
The largest and longest parcel taken reduces significantly the grassy strip of land separating the Spencer Street roadway from the on-site paved shopping center parking area. It is claimed by the plaintiffs that this grass strip is necessary for safety, wintertime snow storage, and most importantly for compliance with the zoning requirements. Article IV, Section 9.02.08, of the Manchester zoning regulations provides that "no vehicle parking shall be provided in the front yard unless separated from the public right-of-way by a fully bermed landscaped border of not less than eight feet." They claim that the resulting encroachment on the parking area and the required reconstruction of the grassy strip along the highway to meet the zoning requirements would cause the loss of 39 CT Page 6524 on-site parking spaces of the 538 spaces available at the time of taking. The zoning regulations then required 491 spaces. Article IV, Section 9.01.02, of the zoning regulations requires that "[e]ach vehicle parking space shall contain a rectangular area not less than 9 feet by 18 feet." If an eight foot landscaped buffer is built, this would reduce the aisle width behind the new parking spaces to 17.5 feet for two-way traffic, sufficient, but narrow and a traffic hazard, and difficult for truck traffic.
The plaintiffs also claim by their estimated calculations a shortage of 38 required parking spaces should a free-standing building of 2,500 square feet be erected on the parking lot. In substance, their claim is that the taking not only makes the subject property non-conforming, but also additionally causes the loss of parking spaces which could legally accommodate additional building construction under the town zoning regulations. To support their substantial claim for severance damages, the plaintiffs offered testimony supporting a revision of the property's parking plan to accommodate the construction of a 2,500 square feet free-standing building in the parking lot.
No evidence was offered to show the existence of plans, or even consideration of such construction plans, as of the date of taking. Despite the fact that the plaintiffs have owned and operated this shopping center since its development and construction in 1973, there is no evidence that a modification of the site plan to erect a free-standing commercial building in the parking area was ever filed or a plan even prepared. See Minicucci v. Commissioner of Tranrportation,211 Conn. 382, 386 (1989).
The plaintiffs' appraiser used the sales comparison and income approach in his tabulation of damage to the subject property by the takings. Because there are inherent differences in shopping center properties, he considered the sales comparison approach secondary to the results of the income approach in his appraisal. He observed that the sales prices represent consideration of leased fee rights with varying lengths of lease commitments. Based on the income analysis, he estimated the before taking value at $4,360,000 and the after taking value at $4,017,000. The difference, or damage, of $343,000 was subdivided as follows: property taken — $43,000 and severance damages to the remainder — $300,000.
In addition to the above damage claims, the plaintiffs also seek specific damages resulting from the defined traffic easements taken under Docket No. 582684 "for the installation and maintenance of traffic appurtenances." Subsequent to the takings, the defendant exercised its rights under the easements and erected a pole approximately 26 feet in CT Page 6525 height to anchor and support overhead traffic signals. According to the plaintiffs' appraiser's testimony, the location of this pole blocks the view of the 120 square feet free-standing sign servicing the shopping center site at its location on Spencer Street. As a supplement to his appraisal report, Flanagan included an estimate from Barlo Signs, of Hudson New Hampshire, of $16,000 for the relocation of this sign. The defendant contests this claim on the ground that the plaintiffs are claiming damages for an issue that arose subsequent to the takings.
At the condemnation hearing in Docket No. 582685, it was disclosed that on the date of the taking, an update of the defendant's appraisal was made estimating the damages on that date at $1,725, an increase of 56.8% over the original estimate of $1,100. This valuation was made on the basis of three comparable sales in the Manchester area. No corresponding amendment was made to either the statement of compensation or certificate of taking filed in court. Therefore, no correction was made to the appeal filed in said action.
The defendant's appraisal in Docket No. 582684 was also based on three comparable sales in the Manchester area. His estimate of damages was calculated as follows: before the taking, land area of 395,670 square feet at $3.50 per square foot — $1,384,845; improvements to be acquired included one striped, paved, parking space for a traffic signalization box — $2,500; 2 Gulf sign bases relocated and wiring — $3,000; vegetation — $250; total value before taking — $1,390,595, rounded to $1,391,000.
After the taking, unencumbered area of 389,814 square feet at $3.50 per square foot — $1,364,349; defined traffic easement 2,173 square feet at 65% of $3.50 per square foot — $4,944; total value after taking — $1,369,293, or $1,369,300. The difference, or damage by this calculation, was estimated to be $21,700. When added to the damage in Docket No. 582,685, the total damages from the four takings was estimated to be $23,425. No update of this appraisal was made for the 10 months from September 23, 1997, to the taking on July 24, 1998, as in the companion appraisal.
During his testimony, the state's appraiser explained that he allowed damage for only one parking space, that being taken for the traffic signalization box. At the time of his appraisal, that was the only space he believed relevant to the state's acquisition. At the hearing, however, he corrected that conclusion. As to the other 38 parking spaces taken, he testified that had he previously been aware of the zoning requirement that no vehicle shall be parked in the front yard unless separated from the public right of way by a fully bermed landscaped border of not less than eight feet, he would have acknowledged that in his report. He would CT Page 6526 have stated that he assumed that a variance for setback would be granted for those spaces and that they would still remain a functioning part of the entire shopping center. He concluded that the eight foot setback would make the 38 spaces nonconforming, bu that did not affect his estimate of damage. The defendant's appraiser also allowed no damage for the easement to build a pole in front of the large shopping center sign. However, he did not question the plaintiff's estimate of $16,000 for the necessary relocation of the sign.
The defendant emphasized the following points in his brief: (1) the plaintiffs' appraiser testified that there are no plans, architectural renderings, market data, letter of interest, diagrams or a petition for approval filed with the town, nor are there contracts or building plans in existence developing the concept of a free-standing bank. (2) The state's appraiser testified that because variances are routinely granted by the municipality for any violation of setback created by a highway project, he could not consider the 38 spaces taken illegal in estimating damages. (3) The plaintiffs made no attempt to mitigate their damage by filing for a parking setback variance. (4) Only one parking space was lost due to the placement of a traffic controller box.
The plaintiffs' claim for severance damage relating to the possible future free-standing building in the parking area is a nonissue in the circumstances of these takings. As noted by the defendant, before the takings, there were no plans, architectural renderings, application for a site plan approval, or other such tangible or documentary evidence of an intent to construct such a building. It appears that the claim relating to a free-standing expansion of the shopping center had its origin after the taking in the development of the claim for severance damage.
The claim for severance damage based on the reduction of 38 parking spaces is independent of the construction of a free-standing building. The plaintiffs always had the same right to seek such a modification of the shopping center site plan that they now have, and will continue to have, with no consequence of severance damage due to the takings now before the court. That right existed before the takings, and continues to exist after them. Whether constructed before the takings, or after, such a structure would impinge on the parking area and reduce its vehicle capacity. The loss of any parking spaces were the plaintiffs to modify their site plan now cannot be said to be a result of the takings, or an element of severance damage. The taking does not preclude such an expansion. The plaintiffs are seeking to extend severance damage for loss of parking spaces to an unconnected level, the effect of which would be tantamount to double compensation for the same factor of severance damage. That they cannot do. CT Page 6527
In Alemany v. Commissioner of Transportation, 215 Conn. 437 (1990), the trial court's unduly restrictive approach led it to overlook several elements of severance damages that might reasonably have affected the price that a buyer would be willing to pay for the plaintiff's property. First, the trial court failed to consider the impact of the prospect that the illuminated sign would have to be moved on the after-taking value of the property. The trial court rejected this on the ground that the sign had not yet been moved. "That a potential consequence of a taking has not been manifested at the time of trial does not, however, preclude recovery. Slavitt v. Ives, 163 Conn. 198, 206, 303 A.2d 13 (1972). The trial court should have considered the possibility that the sign will eventually be moved. . . ." Alemany v. Commissioner of Transportation, supra, 446.
"In addition to the sign removal, the trial court should also have considered the plaintiff's evidence concerning the possibility that future use of the highway easement could necessitate removal of the landscaped buffer area and reestablishment of the buffer area on the plaintiff's adjacent property, with the concomitant loss of the space available for parking. In concluding that this potential loss was not compensable, the trial court noted that the plaintiff as an existing nonconforming user, might not have to replace the buffer area if the current one is eliminated. This conclusion ignores the fact, however, that the plaintiff is operating under an approved site plan showing a buffer area between the highway and the parking area. While the plaintiff might be able to obtain a variance from the obligation to maintain a buffer area, a potential buyer pf [of] the plaintiff's property would be likely to discount its value because of the risk that such a proceeding would be costly or indeed might not succeed. The trial court should have taken this factor into account." Alemany v. Commissioner ofTransportation, supra, 447-48.
In the proceeding now before the court, there is a very unusual and unexplained coincidence. In Alemany, the state's appraiser included in his estimate of damage the amount of $200 for the loss of the landscaped buffer area, but did not include an amount reflecting the diminution in value of the remainder of the property that might be expected from the prospect of reestablishing the buffer area on the plaintiff's adjacent property. Alemany v. Commissioner of Transportation, supra, 447 n. 6. In the takings now being valued, the state's appraiser again estimated damages only for the vegetation or landscaping in the buffer area in the amount of $250, and did not include an amount reflecting the diminution in value of the remainder of the property that might be expected from the reestablishment of the buffer area on the plaintiffs' adjacent property.
"When only a part of a tract is taken for the public use, `just CT Page 6528 compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. Bowen v.Ives, 171 Conn. 231, 238, 368 A.2d 82; Meriden v. Highway Commissioner,169 Conn. 655, 659, 363 A.2d 1094. `The ordinary rule for measuring damages where a portion of a tract of land is taken is to determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value.' Lefebrve v. Cox, 129 Conn. 262,265, 28 A.2d 5 [1942]. The court should consider any and all damages which will foreseeably follow from the proper consideration of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking. Budney v. Ives,156 Conn. 83, 88, 239 A.2d 842." D'Addario v.Commissioner of Transportation, 172 Conn. 182, 184-85,374 A.2d 163 (1976); Darling v. Waterford, 7 Conn. App. 485, 486
(1986).
Under our law, a judge trial referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 382, 388
(1989); Birnbaum v. Ives, 163 Conn. 12, 21-22 (1972); Feigenbaum v.Waterbury, 20 Conn. App. 148, 153 (1989). It is his task to reach a result that gives the plaintiffs, as nearly as possible, a fair equivalent in money as just compensation for the property taken. Mathisv. Redevelopment Agency, 165 Conn. 622, 623 (1973); Feigenbaum v.Waterbury, supra, 153-54.
Street access and adequate parking adjacent to its commercial and retail establishments are the essentials defining a successful regional shopping center. That the plaintiffs' development has been financially successful as a regional shopping center is evident in its long existence under the original ownership. With that premise, the court finds the factors and elements of their direct and severance damages due to the four takings by the defendant to be as follows: (1) loss of fee to 3,899 square feet of parking area on street frontage; (2) loss of one striped and paved parking space on street frontage; (3) partial loss of 38 striped and paved parking spaces on street frontage; (4) reduction in width of roadway in shopping center parking area behind these 39 parking spaces; (5) necessity to relocate sign because of obstruction; (6) parking variance requiring services of civil engineer and attorney and CT Page 6529 filing fees; and (7) replacement of landscaping.
After viewing the site of the subject property, and after giving due consideration to the opinions of expert witnesses and to a knowledge of the elements that establish value, I find that the before taking value of the subject property was $2,967,525, and that the after taking value of the subject property is $2,876,925. Damages, therefore, are assessed at $90,600.
Judgment may enter for the plaintiffs in the amount of $90,600, with interest at 8% per annum on the excess over the amounts deposited in court with the statements of compensation, ordered herewith to be paid with the damages, from the date of taking on July 29, 1998, to the date of payment, together with costs and a reasonable appraisal fee of $3,500.
 William C. Bieluch Judge Trial Referee