[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 9942
This proceeding is an appeal from the assessment of damage by condemnation that has come to the court on the wrong procedural track, to which it had been directed by the court clerk on instruction from the Civil Court Manager of the Court Operations Division. Instead of being entered on the court records as a separate civil action with payment of the entry fee required by General Statutes Section 52-259, this appeal and application for review of statement of compensation was filed, without payment of the statutory entry fee, as a further pleading in the above-numbered and titled court docket previously created for the deposit with the clerk of the Superior Court of the assessed damages in the amount of $25,650. See City of Bristol v. Sebastiano A. Milano et al.,45 Conn. Sup. 605.
Blanchard Rossetto Enterprises, property owner, has appealed from the assessment of damage paid by the Commissioner of Transportation for the partial taking by eminent domain on September 19, 1997, pursuant to the provisions of Section 13a-73 (b) of the General Statutes, of the premises hereinafter described found to be necessary for the layout, alteration, extension, widening, change of grade, and improvement of the highway known as Sullivan Avenue, Connecticut Route 194. Said premises are situated in the Town of South Windsor, on the westerly side of Sullivan Avenue, containing 4,575 square feet, more or less, bounded and described as follows:
EASTERLY — by Sullivan Avenue, Route 194, 157 feet; SOUTHERLY — by land n/o/f/o heirs of Gertrude M. Plaga Annino, 40 feet, more or less; WESTERLY — by remaining land of owner, 152 feet, more or less, being a line designated "Taking Line" on the map hereinafter described; NORTHERLY — by land now or formerly of South Windsor Development Company, 28 feet, more or less.
Said premises are more particularly delineated on a map entitled: "TOWN OF SOUTH WINDSOR MAP SHOWING LAND ACQUIRED FROM BLANCHARD ROSSETTO ENTERPRISES BY THE STATE OF CONNECTICUT DEPARTMENT OF TRANSPORTATION INTERSECTION IMPROVEMENTS ON SULLIVAN AVENUE AT THE INTERSECTIONS OF GRAHAM ROAD AND AYERS ROAD DECEMBER 1996, JAMES F. BYRNES, JR., P.E. — TRANSPORTATION CHIEF ENGINEER, BUREAU OF ENGINEERING AM) HIGHWAY OPERATIONS" Sheet 1 of 1 (132-123-3).
The subject property is situated in the central portion of South CT Page 9943 Windsor on the west side of Sullivan Avenue immediately to the north of its intersection with Graham Road. Sullivan Road, also known as State Route 194, is the primary road serving the subject neighborhood. Sullivan Avenue provides access to State Route 5 to the west and to the Town of Manchester, Interstate Route 84, and the regional shopping center known as Buckland Hills Mall to the south. The state's improvement of this heavily traveled primary highway called for the taking of the subject property.
The property is zoned General Commercial (GC). Improvements on Sullivan Avenue in the subject neighborhood include four local shopping centers, two professional office buildings, a restaurant and miniature golf center, a car wash facility, several single-family homes, together with undeveloped land such as the subject property. Developments immediately surrounding the subject property include an older community shopping center anchored by a local chain supermarket and an office building to the east. Additional developments include a planned unit development near the corner of Ayers Road and Sullivan Avenue, a gas station, a branch bank, and an older neighborhood shopping center. In summary, the subject neighborhood is a mixed use area with good access to the state highway system. It has a strong capability and attraction for further development of its vacant properties, such as the subject land.
Before the taking, access to the property was available from the highway. On the court's viewing of the subject property in the presence of counsel, it was observed that the entire street frontage of 152 feet, more or less, on the westerly side of Sullivan Avenue of the property remaining after the partial taking of the front or street portion of the owners' property, was enclosed by a metal beam protective guardrail. Thereafter, counsel agreed to file a stipulation concerning possible future access from Sullivan Avenue to the remaining property of the owner for the court's consideration.
The stipulation filed by the parties provided as follows: (1) A guardrail is currently installed in front of the remainder of the appellant's property within the state's right-of-way. The guardrail was installed as part of the project which necessitated the taking of appellant's property. (2) The State of Connecticut has not condemned the appellant's right of access to Route 194 from its remaining property. (3) Under current statutes and regulations of the Department of Transportation, the presence of the guardrail by itself does not prevent the appellant from gaining access from its remaining property to Route 194 subject to the below referenced permit process. (4) The appellant may apply to the Commissioner of Transportation, pursuant to General Statutes Section 13-143a and Regulations of Connecticut State Agencies 13b-17-1, et seq., as amended, which regulations have been admitted into evidence CT Page 9944 in this action as Exhibits 2, 2-1 and 2-2, for a permit to encroach upon the state right-of-way through construction of a driveway to service commercial development on the subject property.
(5) It is reasonably probable that if a permit was applied for to construct a thirty-foot wide access driveway in the approximate center of the property to service a commercial development on said property, such a permit would issue, subject to certain terms and conditions contained therein, and would provide for removal by appellant of a sufficient length of guardrail to accommodate that driveway. (6) An encroachment permit for creation of a driveway entering the roadway in front of subject property would have been needed prior to the taking. (7) This stipulation is for purposes of the present condemnation action only. With the exception of paragraphs 2, 3, 4 and 5 it may not be utilized by either party in connection with any administrative or other judicial proceeding, including but not limited to, any relating to an application by the appellant, its successors or assigns, to install a driveway entering into State Route 194 from the premises which is the subject of this action.
The taking extended about 28 feet from the west line of Sullivan Avenue on the north, and about 40 feet on the south, for an average depth of approximately 34 feet from the highway. The front of the property before the taking was at street grade for a depth of approximately 75 feet. After the taking, the front of the remainder was at street grade for a depth of about 40 feet. The balance of the subject property before and after the taking then sloped downgrade about 15 feet to the rear line.
In the opinion of both appraisers, the highest and best use of the subject property is for commercial development consistent with current zoning in the General Commercial Zone. With this opinion the court agrees, and so finds.
Before the taking, the subject property contained 0.93 acre, more or less. The taking consisted of 4,575 square feet, being 0.105 acre, or 11.29 percent of the original parcel of land in area. In quality and adaptability of the land for future commercial development consistent with its highest and best use before and after the taking, the condemnation consisted of street level frontage of the property, the portion best suited for commercial development. For that reason, its percentage in value of the whole is greater in proportion than the percentage of the area taken. This is recognized in the comparable land sales appraisals by adjustment for topography and grade of slope. The state's appraiser realistically described this severance result: "A portion of the frontage, which is the level area of the lot is now gone. The parcel loses some potential development attractiveness due to the loss of the level frontage." CT Page 9945
Both appraisers utilized the sales comparison approach in valuing the subject property. Because the site is vacant land, the income capitalization and cost approaches were not developed. The owner's appraiser analyzed five comparable sales, one zoned General Commercial in South Windsor, two zoned Business II and one zoned Residence A and C in Manchester, and one zoned Restricted Commercial in Rocky Hill. These ranged in sale price from $2.72 per square foot for the sale in Rocky Hill to $5.56 per square foot for the closest comparable, that on the highway John Fitch Boulevard, South Windsor. With adjustments for the usual appraisal factors including topography, he analyzed these comparable sales prices to range from $3.65 to $5.54 per square foot. Based upon his analyses of these sales, he concluded that they indicated a market value of the subject property before the taking of $4.00 per square foot for a total value of $162,000. In his after taking value computation, the owner's appraiser utilized the same five comparable sales, but with a greater negative adjustment in his analysis of the remainder of the subject property because of its sloping topography. As a result of this added factor, he calculated the value range of the comparables to be $1.39 to $2.77 per square foot, indicating the after taking value of the subject property to be $2.00 per square foot and a total value of $71,500. The value difference of $90,500 after the taking he concluded to be the damages from the taking.
The state's appraiser utilized three comparable sales in his calibration of before and after taking values of the subject property. The first sale in South Windsor was the same sale utilized by the owner's appraiser in his valuation study, but it was now adjusted to a before taking value of $3.91 per square foot, being 26 cents lower. The other two sales were in Manchester. These were adjusted to values of $3.71 and $3.90 per square foot. After comparing these adjusted values to the subject property, he established the price of the latter to be $3.90 pr square foot for a total value of $156,300. A contributing value of $650 for trees acquired in the taking gave a total value of $157,00 rounded.
In his after taking valuation based on the same three comparable sales, he concluded: "An additional adjustment is warranted in the encumbrances area because of the now limited topography of the parcel. All three sales are adjusted 5% as the subject value is diminished." Based on his after taking valuation of $3.70 per square foot, he found the reduced value to be $131,350 rounded, and the total damages to be $25,650.
"When only a part of a tract is taken for the public use, `just compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. BowenCT Page 9946v. Ives, 171 Conn. 231, 238, 368 A.2d 82; Meriden v. HighwayCommissioner, 169 Conn. 655, 659, 363 A.2d 1094. `The ordinary rule for measuring damages where a portion of a tract of land is taken is to determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value.' Lefebrve v.Cox, 129 Conn. 262, 265, 28 A.2d 5 [1942]. The court should consider any and all damages which will foreseeably follow from the proper consideration of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking. Budney v.Ives, 156 Conn. 83, 88, 239 A.2d 842." D'Addario v. Commissioner ofTransportation, 172 Conn. 182, 184-85, 374 A.2d 163 (1976); Darling v.Waterford, 7 Conn. App. 485, 486 (1986).
Under our law, a judge trial referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 382, 388
(1989); Birnbaum v. Ives, 163 Conn. 12, 21-22 (1972); Feigenbaum v.Waterbury, 20 Conn. App. 148, 153 (1989). It is his task to reach a result that gives the plaintiffs, as nearly as possible, a fair equivalent in money as just compensation for the property taken. Mathisv. Redevelopment Agency, 165 Conn. 622, 623 (1973); Feigenbaum v.Waterbury, supra, 153-54.
The elements of the owner's damage due to the taking of September 19, 1997, are: (1) loss of fee to 4,575 square feet fronting on Sullivan Avenue, State Route 194, a heavily traveled primary highway for through traffic east and west in South Windsor, including the entire frontage of 157 feet of the subject property, and being 0.105 acre in area or 11.29% of the entire subject property; (2) conditional and limited access to remainder of subject property upon application of owner, as acknowledged by stipulation of the parties after viewing by the court of the complete enclosure of the after taking frontage by a steel beam protective guardrail; (3) it is reasonably probable that only one thirty-foot wide access driveway in the center of the frontage would be allowed; (4) the costs and expenses of the owner that would be incurred for removal of sufficient guardrail to accommodate such access driveway, together with associated engineering fees; (5) such conditional and limited center access only would hamper traffic movement and development of the subject property; (6) because the greater portion of the frontage, which was the CT Page 9947 level area of the lot is now gone, the remainder of the subject property has lost some potential development attractiveness due to the amount of loss of the level frontage area; (7) additional development costs will need to be incurred for upgrading and leveling of sufficient remaining area to permit an adequate site for construction of a profitable commercial structure; and (8) contributory value of native trees on the land taken.
After viewing the site of the subject property, and after giving due consideration to the opinions of expert witnesses and to a knowledge of the elements that establish value, I find that the before taking value of the subject property was $162,000, and that the after taking value of the subject property is $124,000. Damages, therefore, are assessed at $38,000.
Judgment may enter for the appellant in the amount of $38,000, less $25,650 previously paid, or an excess of $12,350, with interest on such excess at 8% per annum from the date of taking on September 19, 1997, to the date of payment, together with costs and a reasonable appraisal fee of $1,800.
William C. Bieluch Judge Trial Referee