[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Commissioner of Transportation (Commissioner), exercising the state's power of eminent domain took on May 15, 2001, 2.88 acres of a 8.9 acre parcel of land in Branford. The Commissioner initially assessed damages in the amount of $195,000, and deposited said sum with the clerk of this court. The defendant IronWorks Development of Branford, LLC (IronWorks) took this appeal. At the time of condemnation the 8.9 acre parcel together with a second parcel consisting of 17.6 acres were owned by the defendant, RBR, LLC. (RBR) and subject to an agreement to sell to IronWorks for the sum of $2,500,000.[1] Title to both parcels was subsequently conveyed by RBR to IronWorks.
On October 10, 2001, the court ordered the deposit of $195,000 to be paid to IronWorks.[2] On June 27, 2002, Anchor Reef Club at Branford, LLC, (Anchor Reef) moved to intervene alleging an assignment from IronWorks of its interest in the condemnation award, which motion was granted by agreement on July 8, 2002.
 I
This case is troubling as it effects the credibility of the state. The Commissioner assessed damages at the time of condemnation in the amount of $195,000, based upon appraisal report with a valuation date of October 31, 2000. The Commissioner then produced an appraisal at the time of trial from the same appraiser which admits that the value of the property taken as of May 15, 2001 (seven months later) was $270,000, representing an increase of 38 per cent over the amount assessed in the statement of compensation. The Commissioner did not amend his Notice of Condemnation and Assessment of Damages to reflect this substantial increase. If IronWorks had relied upon the integrity of the statement of compensation of $195,000 and did not take an appeal, it would not have even received $270,000 which the Commissioner now concedes to be the value of the CT Page 8867 property.
 II
"The owner of land taken by condemnation is entitled to be paid just compensation. Conn. Const. art. I § 11. If the taking is partial, the usual measure of damages is the difference between the market value of the whole tract with its improvements before the taking and the market value of what remained of it thereafter. The `fair market value' is the price that a willing buyer would pay a willing seller based on the highest and best possible use of the land assuming, of course, that a market exists for such optimum use." (Citations and internal quotation marks omitted). Minicucci v. Commissioner of Transportation, 211 Conn. 382, 387
(1989). IronWorks, who took the appeal, has the burden of proof. Levinev. Stanford, 174 Conn. 234, 235 (1987).
The 2.88 acres taken was developable land and the taking included 485 feet of frontage on Maple Street leaving only 25 feet of frontage making accessibility to the remaining 6.02 acres at least difficult because it includes wetlands.
The Commissioner claims that the 8.9 acre parcel had little value and that it was merely a "tag along parcel" as part of the purchase of the 17.6 acre parcel. The 17.6 acre parcel is prime developable land situated on Maple Street and the Branford River. This parcel received final zoning approval for a multi-use development consisting of a 110 room luxury hotel with conference and banquet facilities, 135 condominium units, two Class A office buildings, and 15 units of senior housing as well as recreation and boating facilities.
Although the 8.9 acre parcel, also situated on Maple Street across from the 17.6 acre parcel, is burdened with two tidal streams, tidal vegetation and has no direct access to the Branford River, the 2.88 acres taken by the Commissioner was dry land and is suitable for building. Indeed, the Commissioner now concedes that as of the date of taking its value is substantially higher and revised the value of the 2.88 acres taken increasing it to $93,750 per acre. If this 8.9 acre parcel was a "tag along", as described by the Commissioner, IronWorks received a "bonanza."
The Commissioner argues that the court should consider the environmental stigma of the property. Northeast Connecticut EconomicAlliance, Inc. v. ATC Properties, 256 Conn. 813, 833 (2001); General Statutes § 13a-76 as amended by Public Act 01-75. The problem with the Commissioner's environmental stigma argument is that there is not a scintilla of evidence that the property was contaminated. Although, as CT Page 8868 pointed out by the Commissioner, the purchase contract between RBR and IronWorks provided that IronWorks would pay the first $1,000,000 for any necessary environmental cleanup and RBR was to pay the next $500,000, this ignores that the provision is effective only if there is an adverse report with respect to environmental problems. Indeed, there was an environmental inspection and the sale was still consummated.
IronWorks argues that the sale of the two parcels to it from RBR should be used as the value of the land before the taking, that is — the per acre value should be obtained by dividing the total purchase price of $2,500,000 by the 26.5 acres to obtain the before valuation of the 2.88 acre parcel, which would be $94,339 per acre. IronWorks is correct that the price paid for the property in an arm's length transaction when it is close in time to the date of condemnation is "one of the most important pieces of evidence in determining its present value." (Citations and internal quotation marks omitted). Pandolphe's Auto Parts, Inc. v.Manchester, 181 Conn. 217, 223 (1980). IronWork's argument would have merit if the 8.9 acre parcel had the same prime value as the 17.6 acre parcel which fronts on the Branford River. It, however, does not. Indeed, IronWorks' own appraiser recognized this when he assigned a value of $18,000 for the 6.02 acres of land remaining from the 8.9 acre parcel.
Taking into consideration all the testimony before the court, including the appraisal reports produced by both IronWorks and the Commissioner, and a visual inspection of the property, the court concludes that the before taking valuation of the 8.9 acre parcel is $67,296[3] per an acre or $598,934 for the 8.9 acre parcel. The court also concludes that the 6.02 acres of remaining land has an after taking value of $3,000 per acre or $18,060.[4] Accordingly, the court concludes that based upon comparable sales, the fair market value of the 2.88 acres of Parcel B is $580,874 as of the date of taking on May 15, 2001.
Accordingly, the court finds that IronWorks is entitled to a judgment of additional compensation in the amount if $385,874 ($580,874 less initial deposit of $195,000).
 III
Notwithstanding, IronWorks loss of the use of $75,000 for over a year because the Commissioner failed to file a statement of compensation and deposit funds that even his own appraiser conceded to be the value of the property taken, the Commissioner argues that the award of interest should be the United States Treasury bill rate which is currently under three per cent per annum. That, simply, is not equitable.
General Statutes § 37-3c provides that the court has the option of CT Page 8869 providing an "interest at a rate that is reasonable and just on the amount of compensation awarded." If the legislature had wanted. to limit the Court to the United States Treasury bill rate, it would have so provided. Under the circumstances of this case, the rate of eight per cent per annum provided in General Statutes § 37-1 (legal rate) should apply from the date of the taking. Accordingly, IronWorks is entitled to eight percent on $385,874 from May 15, 2001 to the date of this judgment.
In addition, IronWorks is entitled to the fee for its appraiser's report in the amount of $1500.
 IV
In sum, judgment may enter in favor of IronWorks against the Commissioner in the amount of $385,874, plus interest at the rate of eight per cent per annum from May 15, 2001 plus appraiser fees in the amount of $1500. The court will retain jurisdiction over this matter in case the parties are unable to agree on the mathematical calculations for the interest and to determine the issues raised by the granting of Anchor Reefs motion to intervene.
 ___________________ Berdon, Judge Trial Referee